WILD *v.* DEIG ET AL.

PRIVATE ROAD.—*Petition.*—*Land-Owners.*—In an action to recover damages and to restrain the defendant from tearing down fences and opening a private road through the land of the plaintiff, the name of the plaintiff being mentioned in the petition for the road;

*Held,* that the plaintiff could not attack the validity of the proceedings to establish the road on the ground that the names of all the owners of lands over which the road was to pass were not mentioned in the petition.

SAME.—*Notice.*—*Jurisdiction.*—That notice has been given of a petition for the opening of a private road, is a jurisdictional fact that must be proved, before the board of commissioners can act on the petition; and if the record shows a finding that due notice was given, it is conclusive.

SAME.—*Constitutional Law.*—*Eminent Domain.*—The statute authorizing the location of private roads, as far as it provides for the exercise of the right of eminent domain to establish them, is unconstitutional.

From the Posey Common Pleas.

*A. P. Hovey* and *G. V. Menzies,* for appellant.

*W. Harrow, W. M. Hoggatt,* and *J. H. Laird,* for appellees.

OSBORN, J.—This was an action by the appellant to recover damages, and to restrain the appellees from tearing down his fences, and opening a pretended private road through his land.

Two questions are presented for our consideration: 1st. The regularity of the proceedings of the board of county commissioners of Posey county in establishing the road.

2d. The constitutionality of the law under which it was established.

The petition for the road was signed by twenty-nine free-holders of the county, six of whom resided in the immediate neighborhood of the proposed private road. It asked "for the location of a private road in Marr's township of said county," upon a route specified. It stated that it would pass over the land of the appellant, Lawrence Miller's heirs, Andrew Deig's heirs, and others, naming them.

The petition was presented to the board of commissioners at a regular session. The board acted upon it and made the following order: "Which petition after being publicly read, and no person objecting thereto, and the board being satisfied, from the evidence produced, that due notice had been given by putting up at least three public notices along the line of said proposed route, do therefore order that the road described in the foregoing petition be opened to the width of sixteen feet, and that the expense of opening said road be collected from the parties for whose benefit said private road is opened, and that the county auditor give the necessary notice to the township trustee through whose township said road runs."

It is insisted that the petition was invalid, because it did not contain the names of all the owners * * * of land over which the road was to run; and *Hays* v. *Campbell*, 17 Ind. 430, and *Hughes* v. *Sellers*, 34 Ind. 337, are cited. We hold that the proceedings are valid, when they are attacked as in this case, and when the name of the person making the attack is mentioned in the petition. We do not hold that the petition would be good in an appeal from the action of the board of commissioners, nor that the proceedings would be valid against an owner not named in the petition. We do not pass upon either of these questions.

It is also objected, that the notice given was not sufficient. The complaint alleges that no notice was given to the appellant of the application for the road, and a copy of a notice, alleged to have been proven before the board, accompanies

the complaint. The name of the appellant does not appear in that.

Proof of notice was a jurisdictional fact. Until that was shown, the board could not act. The record shows that due notice was given, and that is conclusive. *Little* v. *Thompson*, 24 Ind. 146; *Wright* v. *Wells*, 29 Ind. 354; *Kissinger* v. *Hanselman*, 33 Ind. 80.

The main question in the case is the constitutionality of the law authorizing the location of private roads.

The case of *Kissinger* v. *Hanselman*, 33 Ind. 80, is cited as deciding the question in favor of the law. In that case, the petition was for "a certain private road for the purpose of having access to the burial ground known as," etc. The commissioners ordered the road to be opened by the appellee (the applicant for the road) on payment of damages; the damages were paid and the road opened, and the defendant obstructed the road. The court said, that "the road in question was a public highway, and, consequently, that the questions most pressed for the appellant are not in the case." That if it was only a private road, then half the highways in the State were of that class; void in their inception, if the right of eminent domain could not be exercised to take land for them, and not in any respect under the jurisdiction of the local authorities, nor to be opened or kept in repair by the public.

From the language used by the court in that case, we think the proviso in the section providing for private roads must have been overlooked. 1 G. & H. 366, sec. 49. In that proviso it is declared that the petitioner "shall open and keep in repair such road at his own expense." That section was amended by an act approved March 9th, 1861. 3 Ind. Stat. 290. By that act any person or persons might have a private road laid out, * * * under regulations provided by law for the location * * * of highways, so far as such regulations might be applicable: "Provided, that such board of commissioners may order such private road to be laid out, * * * without any

view, if there be no remonstrance against such petition:
Provided further, that such petitioner or petitioners asking
such road shall open and keep in repair such road at his or
their own expense, and that such road may be either dirt,
plank, macadamized, gravel, or railroad."

We think it manifest that the theory of the court was,
that the public were to open the road and keep it in repair,
and that it was under the jurisdiction of the local authori-
ties, whereas by the statute such was not the case.

Mr. Angell, in his work on the law of highways, says:
" The word 'way' is derived from the Saxon, and means a
right of use for passengers. It may be private or public.
By the term 'right of way,' is generally meant a private
way, which is an incorporeal hereditament of that class of
easements, in which a particular person, or particular descrip-
tion of persons, have an interest and a right, though another
person is the owner of the fee of the land, in which it is
claimed." Angell Highways, 1, 2. " Highways are pub-
lic roads, which every citizen has a right to use." *Id.* 3.
" A passage, road, or street, which every citizen has a right
to use." Bouv. Law Dict.

The act to provide for the opening of highways recognizes
and calls all public roads highways, and in all such cases
viewers must be appointed ; and before the commissioners
can order the road to be opened as a highway, such viewers
must find that it is of public utility. A private road is
called a " private road " as contradistinguished from a public
road or highway. No viewers are required unless a remon-
strance is filed. When a highway is located, the board of
commissioners shall order it opened and kept in repair, and
the order shall be transmitted to the trustee of the township
in which the location is made ; and the trustee shall notify the
proper supervisor to work the road. 1 G. & H. 393, sec. 18.
When a private road is located, the petitioners shall open
and keep it in repair at their own expense. They get no
credit for the work done upon such road. It is made a
penal offence to obstruct a public highway, and supervisors

are liable to be fined for failing to keep the highways in their districts in repair. The statutes of this State recognize the distinction between public and private roads. One is for the use of the public and must be maintained at public expense; the other is, as its name indicates, private, for the use of the particular persons for whose benefit it is located, and must be maintained at their expense. It is not for, and cannot be used by, the public.

The constitutionality of the provision depends upon the power of the legislature to authorize the appropriation under the right of eminent domain. In the case of *The Water Works Co., etc.,* v. *Burkhart,* 41 Ind. 364, it was said, that "the right of eminent domain, that is, the ultimate right of the sovereign power to appropriate, not only the public property, but the private property of all the citizens within the territorial sovereignty, to public purposes, is inherent in the government. * * * It is to be exercised only when the public exigencies require it. * * * If the legislature attempts, under the power of taking property under the right of eminent domain, to take property confessedly not for public use, then the courts may prevent it." Mr. Cooley, in his work on Constitutional Limitations, says: "It is conceded on all hands that the legislature has no power, in any case, to take the property of one individual and pass it over to another without reference to some use to which it is to be applied for the public benefit. * * * It seems not to be allowable, therefore, to authorize private roads to be laid out across the lands of unwilling parties by an exercise of this right. The easement in such a case would be the property of him for whom it was established." Cooley Const. Lim. 530.

*Bankhead* v. *Brown,* 25 Iowa, 540, held that a law of that State, authorizing the location of private roads and appropriating private property therefor, was unconstitutional. DILLON, C. J., in his opinion in that case, says: "With respect to the act of 1866, we are of opinion that roads thereunder established are essentially private, that is, are the private

property of the applicant therefor. * * * Such road
may be established upon the petition of the applicant alone;
and he must pay the costs and damages occasioned thereby,
and perform such other conditions as to fences, etc., as the
board may prescribe. The public are not bound to work or
keep such roads in repair, and this is a very satisfactory test
as to whether a road is public or private." *Sadler* v. *Langham,*
34 Ala. 311, held the same doctrine. After referring to the
statutes, the court, on page 332, says: " Under an irresistible
implication, springing out of the language employed in each
of these statutes, there was an attempt made to confer
authority to take the private property of some person or per-
sons, other than the applicant, as a track for such road. This
is a taking of private property. Is the use public? The stat-
ute speaks alone of private roads. They are to be opened
and kept in repair at the expense of the applicant, and he
alone is to make compensation to the owners of the land
over which it passes. Their burdens are to be borne by
him, and for their performance he can claim no exemption
from work on public roads. We think it clearly appears
that these uses are simply private; and there is nothing in the
statute which authorizes public travel on such private roads.
So far as the statutes assume to give authority to lay out
such road over the lands of another without his consent, the
statute is unconstitutional." *Nesbitt* v. *Trumbo,* 39 Ill. 110,
held that an act authorizing the establishment of private
roads, so far as it undertook to appropriate private property,
was unconstitutional; that the legislature was powerless to
afford the means by which a private way could be estab-
lished over another's land without his consent. *Dickey* v.
*Tennison,* 27 Mo. 373; *Osborn* v. *Hart,* 24 Wis. 89; *Taylor*
v. *Porter,* 4 Hill N. Y. 140, and others, hold the same.
The fact that the statute authorizing such ways declares, that
they shall be for the exclusive use of the applicant, does not
in our opinion change his right. It is to be a private, not
a public way, established and maintained at his expense.
The public authorities have no control over it. It is as

Wild *v.* Deig *et al.*

much his, as if he secured it by contract instead of by condemnation.

Some of the courts have upheld laws somewhat similar to ours. The reasons given are not uniform. That such ways are branches of the highways and a part of a system, that the power has been exercised and undisputed for a long time, and that the public are interested in securing to every citizen a way to and from his land, are not, in our opinion, sufficient to authorize taking the private property of one and conveying it to another, either with or without compensation.

Concede that the public exigency requires that a way should be opened to every man's farm, and that the State may and should provide for the establishment of a public road or highway, to enable every citizen to discharge his duties, and travel to and from his farm; it does not follow that such ways should be private and owned by the party applying for them. If it would be of public utility to establish the road, then it should be a highway. If not, the right of eminent domain cannot be exercised to establish it. It is not the amount of travel, the extent of the use of a highway by the public, that distinguishes it from a private way or road. It is the *right* to so use or travel upon it, not its exercise.

We refer to the following additional authorities, bearing upon the question: *Clack* v. *White,* 2 Swan Tenn. 540; *Hickman's Case,* 4 Harring. Del. 580; *Perrine* v. *Farr,* 2 Zab. 356.

The judgment of the said Posey Common Pleas is reversed, with costs.

The cause is remanded, with instructions to sustain the demurrer to the second paragraph of the answer, and for further proceedings in accordance with this opinion.