## SUPREME COUNCIL CATHOLIC KNIGHTS OF AMERICA
### v. LOGSDON ET AL.

[No. 22,594.   Filed April 21, 1915.]

1. INSURANCE.—*Contracts.*—*Statutory Provisions.*—The law of a state subject to which a mutual benefit society holds its charter is as much a part of a contract of insurance issued by it as if written therein in full.  p. 187.

2. COURTS.—*Decisions of Other States Construing Statutes.*—*Conclusiveness.*—*Rights of Parties Under Contract of Insurance.*— The courts of this State must follow the courts of last resort of another state in construing the statutes of that state; hence, in an 'action on a fraternal benefit certificate issued by a society chartered by the state of Kentucky, purported amendments to its by-laws affecting the rights of the parties must be treated as controlled by a statute of that state enacted after the policy was issued and prescribing that copies of all amendments to by-laws shall be attached to the policy, under a construction by the courts of that state that the requirement applies to policies in existence at the time of its enactment.  p. 187.

3. CONSTITUTIONAL LAW.—*Insurance.*—*Impairment of Contracts.* —*Reserved Legislative Power.*—The statute of a sister state providing that amendments to by-laws by fraternal insurance societies should be ineffective unless attached to the policies, construed as applying to policies in force at the time of its enactment, can not be held to impair the obligations of the contract sued on within the inhibition of §10, Art. 1, of the Federal Constitution; though such contract was issued and in force when the statute was enacted and reserved to the society the right to amend its by-laws, where the society was organized and operating under a special charter of that state providing that it was subject to amendment and alteration at the legislative will. p. 190.

4. INSURANCE.—*Fraternal Insurance.*—*Statutes.*—*Construction.*—A statute of a sister state declaring that amendments to the by-laws of any fraternal insurance society incorporated in that state shall be ineffective unless attached to the policies issued by it, and that unless so attached no such by-law shall be received in evidence in any controversy between the parties, and shall not be considered a part of the policy, does not establish a rule of evidence merely, but goes to the very essence of the contract itself by defining what is and what is not a valid contract, and the method of incorporating terms and conditions into it, and is therefore controlling on the courts of this State in determining

the rights of parties to a contract issued by a society incorporated in such sister state.    p. 197.

5.   INSURANCE. — *Fraternal Insurance.* — *Nonpayment of Assessments.*—*Forfeiture.*—The nonpayment by a member of a fraternal insurance society of an illegal assessment can not work a forfeiture of his policy.    p. 197.

6.   APPEAL.—*Review.*—*Harmless Error.*—*Failure to Give Instructions.*—Error of the court in failing to instruct the jury as to the meaning of the decisions of a sister state in construing a statute of that state which affected the matter in controversy was harmless where the verdict was in accordance with the true interpretation of such decisions.    p. 198.

7.   INSURANCE.—*Fraternal Insurance.*—*Unlawful Assessments.*—*Payment.*—*Effect.*—The payment by a member of a fraternal insurance society through a long number of years of assessments unlawfully levied would not estop him from refusing to pay another, nor would he be required to tender payment of the amount of the assessment originally stipulated.    p. 198.

8.   CONSTITUTIONAL LAW.—*Insurance.*—*Impairment of Contracts.*— The repeal of a statute requiring copies of amendments to the by-laws of a fraternal insurance society, to be effective, to be attached to the policies issued by it, does not render effective amendments to by-laws so as to control a certificate matured two years prior to such repeal, and to which they were not attached, since to hold otherwise would result in impairing the obligations of the contract.    p. 198.

From Gibson Circuit Court; *Herdis F. Clements,* Judge.

Action by Mary S. Logsdon and others against the Supreme Council Catholic Knights of America. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Hiram M. Logsdon, Albert J. Veneman* and *Thomas Duncan,* for appellant.

*Drury & Drury* and *Geo. K. Denton,* for appellees.

ERWIN, C. J.—This was an action on a benefit certificate, issued January 25, 1882, on the life of Barney Logsdon, by appellant, and the appellees are the beneficiaries. The issues in this case are as follows: To the complaint which was an action on the contract for payment of the face of the certificate, five paragraphs of answer were filed. The first was a general denial. The second set out the by-laws

of 1899, providing for an assessment of $2.40 at the age
of Logsdon and providing a forfeiture for failure to pay
the same, and alleged a levy of assessments Nos. 801 and 802
in accordance with those by-laws and the failure of the
member to pay the same and the consequent forfeiture of
his membership and insurance on October 23, 1904. The
third paragraph alleged that the member had withdrawn
from the society prior to his death. The fourth paragraph
set up a by-law limiting the right of action to a period of
three years after the death of the insured and alleged that
under the by-law the action was barred. The fifth para-
graph stated that the by-laws with reference to assessments
and the penalty for failure to pay the same were amend-
ments made in the year 1899, and alleged the levy of assess-
ments Nos. 801 and 802 under said amended by-laws, which
were the same by-laws set out in the second paragraph, and
alleged the forfeiture of membership and insurance for fail-
ure to pay the assessment on October 23, 1904. This para-
graph also alleged that the member had acquiesced in the
amendment of the by-laws by paying assessments under it.
To these paragraphs of answer, except the first which was
a general denial, the appellees filed a reply in two para-
graphs, the first being a general denial. The second para-
graph stated that the contract was made in the state of
Kentucky and set out the act of 1893 of the General As-
sembly of the state, which required copies of amendments
to the by-laws to be attached, and provided that the same
should not be a part of the certificate, nor should the same
be admitted in evidence as proof of the by-laws unless so
attached to the certificate, and alleged that the statute had
been held by the court of appeals, the highest court of the
state, to apply to fraternal insurance associations, and alleged
that none of the by-laws on which any of the defenses set
out in the paragraphs of answer were based, had been so
attached, and that all of the amendments were made after
the enactment of the statute, and that it had been held by

the court that the statute applied to amendments to by-laws made after the enactment in cases where the original contract had been made before the statute was enacted, and that the court of appeals had also held that a member could not waive the statute or acquiesce in any amendment not made in accordance therewith so as to make the same binding upon him. There are other matters stated in the reply which are not material to the issues as submitted at the trial and which need not be referred to.

The facts presented at the trial are as follows: The appellant is a fraternal mutual benefit association incorporated under the laws of the state of Kentucky, by special act of the legislature, approved on April 1, 1880. The decedent, Logsdon, became a member of this association on January 25, 1882, having united with the local lodge at Waverly, in Union County, Kentucky, at which time a certificate of insurance was issued to him, insuring his life in the sum of $2,000, payable to the appellees, the wife and children of insured. Logsdon was forty-seven years of age at the time he became a member and under the constitution and by-laws was liable to an assessment of one dollar and fifteen cents. The appellant undertook to amend its by-laws in the year 1899 so as to increase his assessment from and after July 1 of that year to $2.40, and thereafter in the month of August, 1904, attempted to amend the by-laws so as to increase his assessment at his then age, of sixty-nine years to $15.38, from and after November 1 of that year. Logsdon paid all assessments and dues until the fall of 1904, but was marked by the appellant as suspended for nonpayment of assessment on October 23 of that year. On December 14 following, he died. The question is as to the validity of the assessment for nonpayment of which he was suspended and consequently as to the validity of such suspension. This question arises under a statute of the state of Kentucky enacted in the year 1893, which provided that copies of all amendments to the by-laws, among other things, must be

attached to the certificate of insurance, and that if not attached, such amendment should not be received in evidence and should not become a part of the contract. Neither the amendment of 1899 nor that of 1904 was so attached. As already stated the member paid all assessments until after the amendment of 1904 had been made, increasing his assessments to $15.38, but it is claimed by appellant that the assessments for nonpayment of which he was suspended on October 23, 1904, were made under the amendment of 1899, in the sum of $2.40. The question is therefore as to the validity of this amendment.

In the granting of the charter to appellant, the legislature of the state of Kentucky, made provision for the changing of this charter, and appellant, when it accepted the charter and began business thereunder, did it with full knowledge that the legislature might impose upon it burdens not contemplated originally. When the contract of insurance was made between appellant and Logsdon and the certificate issued, the law of Kentucky was as much a part of the contract as if written into the certificate of insurance, in full. *Citizens Savings Bank* v. *Owensboro* (1899), 173 U. S. 636, 19 Sup. Ct. 530, 43 L. Ed. 840; *Eagle* v. *New York Life Ins. Co.* (1911), 48 Ind. App. 284, 91 N. E. 814.

It is contended by appellant that even if it is held that the changes in the by-laws are not effective unless attached to the certificate as required by §142, Chap. 171 of the acts of the General Assembly of the state of Kentucky for the year 1893 (§679 Carroll's Statute 1903), that that act is not retrospective and can not apply in this case. The court of appeals of the state of Kentucky in passing upon this identical question, held that its provisions apply to all incomplete contracts and to certificates already in existence as well as to those issued subsequent to its enactment. *Supreme Lodge, etc.* v. *Hunziker* (1905), 121 Ky. 33, 87 S. W. 1134. It is there said: "as section

679 Ky. Stats. 1903, enacted in 1893, was in force when the by-law was adopted, the latter being in addition to the terms of the contract made after the enactment of the statute, was subject to the terms of the statute, which provided that by-laws of such societies were not to be deemed part of certificates of insurance unless such by-laws were printed upon or attached to the certificate. The point is made here that the enforcement of the statute as to contracts then in existence was not contemplated by the statute, and, besides, would be an impairment of the obligation of the contract, a repugnance to the Constitution of the United States." The court further says: "It is true that the statute itself excludes prior contracts from 'its operation. This meant completed contracts. There could have been no other purpose on the part of the legislature to exclude prior contracts of insurance than to respect their obligation as it then was. The mischief aimed at by the statute was to prevent fraud and oppression being practiced upon insured persons. For, although the insurer might be a coöperative concern, it was recognized that its governing body, whether representative or not, might overreach his understanding, and unjustly impose on him by secret regulations or by-laws, made part of the contract by reference only. This pernicious practice had obtained to some extent. The idea was to curb it, to make it impossible in the future. The provision in the old policy that it should be subject to by-laws then in force, or that might thereafter be adopted, left the contract open for amendment in the future. How it was to be amended further than it was to a 'rule or regulation' of the society, was not stated. Now the State, after that kind of open contract was made, has, by the statute alluded to, required in effect and intent, that all future engagements of insurance of this class should conform to a prescribed procedure, or else they should be void. It did not affect any previous contract, in so far as its obligation had been fixed. But we see no reason why the statute should

not apply to alterations or changes of such contracts. Such alterations are in a sense new contracts, although it had been previously provided that they might be entered into. The new matter was never before an obligation. When it came to be attached to the original contract as an obligation of the parties, a police regulation of the State required certain prerequisite formalities before it became their act. This did not impair the obligation of the old contract, but dealt alone with the attempt to alter that contract. The new matter could not have been added at all, as was done, except for the provision of the old certificate that let it in. That provision gave the right to the insurer to alter the terms or conditions of the original agreement of the parties, at any time in the future, by the adoption of a new rule or regulation of the coöperative society affecting it. Now, if the statute took away that right, then it would seem to impair that obligation. But it did not. The right to alter or amend by-laws and rules, or to adopt new ones, is untouched by the statute. Hence it can not be said that it was impaired. The new law, leaving the old contract precisely as it was found, laid hold of the parties, and said, in effect, 'When you make alterations of this contract, as you may do by the adoption of by-laws or rules, the sovereign power of this State, in the exercise of its duty to prevent oppression and fraud in insurance effected in this state, requires that a copy of such by-law shall be indorsed on or attached to the certificate or policy of insurance.' It is pointed out in argument that as there is no provision in the statute for serving upon a policy holder, a copy of the after-enacted by-law, and as he might refuse to surrender his policy or certificate that such a copy might be attached or indorsed upon it, or such policy holder might be abroad and inaccessible to either notice or contract, it could not have been contemplated that after the delivery of such policy or certificate the statute would apply. Hence it is reasoned the statute has not covered the case of policies

issued before its enactment and made subject to by-laws adopted afterwards. The statute makes no provision, it is true, for serving a copy of such amended or new by-law upon a policy holder to whom a policy had been delivered. But this omission applies as well to new as to old policies, to those issued after as well as to those issued before the statute was passed. Either one of two courses must be deemed to have been contemplated by the legislature in that event: Either that such new by-laws could not be adopted, or that a service of a copy by offering to deliver and attach it to the policy would suffice. As the former would tend to cripple the power of such societies to impose their conditions by prudent amendments to their by-laws, as well as beget a variety of liabilities in the same class of contracts and among its members having equal rights in its assets and equally liable to its assessments, it must be rejected, because it would be at war with the whole scheme of mutual coöperative life insurance, which is recognized by the statutes as a legitimate business.''

This court is compelled to follow the decisions of a court of last resort of a foreign state in construing the statutes of that state. *Travelers Protective Assn.* v. *Smith* (1915), *ante* 59, 107 N. E. 283, and cases cited. The same question is presented by appellant's proposition that the by-laws of the society make provision that suit shall be brought within three years from the death of the assured. This provision of the by-laws was an amendment to the original by-laws and was adopted after the certificate was issued and was never attached to the certificate as provided by the act of 1893, therefore could not control the bringing of the action on the certificate.

It is further contended by appellant that the statute in question is void for the reason that its effect is to impair the obligation of a contract, and in that respect contra-

3. venes §10, Art. 1 of the Constitution of the United States. In this case it was shown by the evidence

that appellant as an association derived all its powers, rights and authority to write contracts, such as sued on in this action, by reason of a special charter granted by the legislature of the state of Kentucky. Section 8 of that charter provides that "The General Assembly reserves the right to amend and alter this charter". When it accepted the charter it was with the express provision that the General Assembly might, at its will, make any condition, or provision, for the regulation of appellant's business it saw fit. *Marion Tp. Gravel Road Co.* v. *Sleeth* (1876), 53 Ind. 35; *Greenwood* v. *Union Freight R. Co.* (1882), 105 U. S. 13, 26 L. Ed. 961; 2 Kent, Comm. 307; *Tomlinson* v. *Jessup* (1873), 15 Wall. 454, 21 L. Ed. 204; *Berea College* v. *Commonwealth* (1908), 211 U. S. 45, 29 Sup. Ct. 33, 53 L. Ed. 81, and cases cited; *Boston Beer Co.* v. *Commonwealth* (1878), 97 U. S. 25, 24 L. Ed. 989. This would not be so were it not for the section of the charter making the reservation as to amendments or alterations. *Dartmouth College* v. *Woodward* (1819), 17 U. S. *712, 4 L. Ed. 629, 677. The charter of 1880 was the contract between the state of Kentucky and appellant, and must remain inviolate unless changed in accordance with the terms of the contract.

The first important case in which the contract clause of the constitution was applied to the charter of a corporation was the Dartmouth College case and in the concurring opinion in that case Justice Story said: "In my judgment, it is perfectly clear, that any act of a legislature which takes away any powers or franchises vested by its charter in a private corporation, or its corporate officers, or which restrains or controls the legitimate exercise of them, or transfers them to other persons, without its assent, is a violation of the obligations of that charter. If the legislature meant to claim such an authority, it must be reserved in the grant. The charter of Dartmouth College contains no such reservation; and I am, therefore, bound to declare, that the acts of the legislature of New Hampshire, now in question do

impair the obligations of that charter, and are consequently, unconstitutional and void." *Dartmouth College* v. *Woodward, supra.* Subsequent to the decision in the Dartmouth College case, many of the states in granting charters reserved the right to amend them as is shown in the opinion of Justice Miller in *Greenwood* v. *Union Freight R. Co., supra,* and which is as follows: "The opinion in that case carried the protection of the constitutional provision somewhat in advance of what had been decided in *Fletcher* v. *Peck* ([1810], 6 Cranch 87 [3 L. Ed. 162]), and the preceding cases, and held that it applied not only to contracts between individuals and to grants of property made by the state to individuals or to corporations, but that the rights and franchises conferred upon private as distinguished from public corporations by the legislative acts under which their existence was authorized, and the right to exercise the functions conferred upon them by the statute, were, when accepted by the corporators, contracts which the state could not impair. It became obvious at once that many acts of incorporation which had been passed as laws of a public character, partaking in no general sense of a bargain between the states and the corporations which they created, but which yet conferred private rights, were no longer subject to amendment, alteration, or repeal except by the consent of the corporate body, and that the general control which the legislatures creating such bodies had previously supposed they had the right to exercise, no longer existed. It was, no doubt, with a view to suggest a method by which the state legislatures could retain in a large measure this important power, without violating the provision of the Federal Constitution, that Mr. Justice Story in his concurring opinion in the Dartmouth College case, suggested that when the legislature was enacting a charter for a corporation, a provision in the statute reserving to the legislature the right to amend or repeal, it must be held to be a part of the contract itself, and the subsequent exercise of the right would be in accordance with

the contract,. and could not, therefore, impair its obligation. And he cites with approval the observations we have already quoted from the case of *Wales* v. *Stetson* [1806], 2 Mass. 143 [3 Am. Dec. 39]. It would seem that the states were not slow to avail themselves of this suggestion, for while we have not time to examine their legislation for the result, we have in one of the cases cited to us as to the effect of a repeal (*McLaren* v. *Pennington* [1828], 1 Page *102) in which the legislature of New Jersey, when chartering a bank with a capital of $400,000 in 1824, declared by its 17th section that it should be lawful for the legislature at any time to alter, amend, and repeal the same. And 2 Kent, Comm. 307, speaking of what is proper in such a cause, cites as an example a charter by the New York Legislature of the date of February 25, 1822.''

In 2 Kent, Comm. 306, we find the following reference to this same subject. ''A private corporation, whether civil or eleemosynary, is a contract between the government and the corporators; and the legislature cannot repeal, impair or alter the rights and privileges conferred by the charter, against the consent, and without the default, of the corporation, judicially ascertained and declared. This great principle of the constitutional law was settled in the case of *Dartmouth College* v. *Woodward;* (a) and it has been asserted and declared by the Supreme Court of the United States, in several other cases, antecedent to that decision. (b) But it has become quite the practice in all the recent acts of incorporations for private purposes, for the legislature to reserve to themselves a power to alter, modify, or repeal the charter at pleasure; and though the validity of the alteration or repeal of a charter, in consequence of such a reservation, may not be legally questionable, (c) yet it may become a matter of serious consideration in many cases, how far the exercise of such a power could be consistent with justice or policy.˙ If the charter be considered as a compact

between the government and the individual corporators, such a reservation is of no force, unless it be made part and parcel of the contract. If a charter be granted and accepted, with that reservation there seems to be no ground to question the validity and efficiency of the reservation.''

The question came before the United States Supreme Court in *Tomlinson* v. *Jessup, supra.* Justice Field in delivering the opinion of the court in the case said: ''It is true that the charter of the company when accepted by the corporators constituted a contract between them and the state, and that the amendment, when accepted, formed a part of the contract from that date, and was of the same obligatory character. And it may be equally true, as stated by counsel, that the exemption from taxation added greatly to the value of the stock of the company, and induced the plaintiff to purchase the shares held by him. But these considerations can not be allowed any weight in determining the validity of the subsequent taxation. The power reserved to the state by the law of 1841 authorized any change in the contract as it originally existed, or as subsequently modified, or its entire revocation. The original corporators, or subsequent stockholders, took their interests with knowledge of the existence of this power and of the possibility of its exercise at any time in the discretion of the legislature. The object of the reservation, and of similar reservations in other charters, is to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise if the public interest should at any time require such interference. It is a provision intended to preserve to the state control over its contracts with corporators, which without that provision would be irrepealable and protected from any measure affecting its obligation.''

Without the legislative sanction, appellant has no standing in the state of its origin; would have no right to contract with any person at all. The very existence of appellant depends upon a legislative enactment which authorizes it to

do business in the state.    Section 8 of the act of the legislature of Kentucky under and by virtue of which appellant is empowered to issues certificates of insurance in the state, contains the provision that this same power which gave it birth shall have the right at all times to control the manner of doing business, by amending the charter.    This association took from the state a charter to transact business in the state, and in this charter the state impliedly said that if at any time the business of the association is not conducted according to the most approved methods or in accordance with what this state, speaking through its governing body, thinks is not the proper method, then this state may in the exercise of its sovereign authority change the manner of doing business.

The position taken by appellant that it could write a certificate of insurance and make provision in the certificate that the insured should pay such sums per month as the by-laws fixed or that might be fixed from time to time by amendments to its by-laws is inconsistent with its position that appellant is not subject to any amendment the legislature might make governing its transactions.    The legislature says to appellant, you may write insurance and issue certificates to your members, on compliance with certain conditions, and if at any time we think the conditions under which you are issuing these certificates, and collecting premiums on the same, are not proper and right, we will change them. This law requiring the amendment to be attached to the certificate is one of the things the legislature concluded was proper to be done; hence it amended the charter requiring that, before the amendment to the by-laws increasing the rate of insurance should be effective, it should be attached to the certificate.    This of course could not affect any increases in the rates made before the statute was enacted, but after the amendment of the charter, appellant had notice that, if it desired to increase the rate of insurance, there was but one way to do so, and that was to attach a copy of the by-

laws, increasing the rate, to the certificate. The right to increase the rate by an amendment to these by-laws was not denied, but if done could only be effective by following the terms of the statute and attach it to the certificate. This legislation was authorized by the terms of the charter itself. Appellant provided in its certificate that Logsdon should pay such premiums as the by-laws in effect at the time the certificate was issued, named, or such as should be provided by any lawful amendment thereto at any time in the future. This was binding on the insured as contended by appellant.

Section 8 of the charter was as binding upon appellant as any other part of that act. It was as much a part of its by-laws as if written therein. Suppose the original charter had made the same provision as to amendments of by-laws, as the act of 1899 imposes, would it be said that the charter would be invalid for that reason? Certainly not. When this charter was granted, it contained the provision that this or any other condition might be imposed by the state of Kentucky. It was within the conditions of the charter and was binding upon appellant and also upon the insured, and was a salutary provision for the protection of all parties interested. Let us state another hypothetical case. Suppose the by-laws of this society provided that they could be amended only by a two-thirds vote of all members in good standing, and the president and secretary, for good reasons as they believed, decided to increase the rate of insurance, would it be contended that an amendment to that effect, ordered by these two officers alone would be binding upon the members? Nobody would seriously contend that it would. Yet here is one effort to amend the by-laws in a manner not authorized by the statutes of the state and it is insisted that the same is valid and binding. This contention can not prevail.

The legislature of the state of Kentucky in enacting §679, *supra,* requiring amendments to by-laws to be attached to the certificate, made no attempt to change the conditions of

the contract of insurance, then in force, but did provide that if the society desired at any time to change the terms and conditions of the certificate, it should only be effective, if done in a certain manner, *i. e.,* by attaching the amendment to the certificate. The attempt to change the conditions of the contract was in effect making it a new contract for the reason that it added additional burdens to the insured; required him to pay an additional sum per month to carry the same. It was only as to such matters as this that the law applied. The proposed change in the by-laws, which, by the terms of the certificate, was a part of it, would have the effect of making a new contract and abrogating the old one; so that even with the strictest interpretation insisted upon by appellant, this act was not the impairment of the original contract within the meaning of the constitution.

It is insisted by appellant that the provision in the act in question which provides ''and unless so attached and accompanying the policy, no such * * * by-laws

4. * * * shall be received in evidence in any controversy between the parties to or interested in said policy, or certificate, and shall not be considered a part of the policy'', is an effort to establish rules of evidence and is not controlling outside the state of Kentucky. This would be true if confined to what should be matter of evidence, but this law goes to the very essence of the contract itself, defining what is, and what is not a valid contract of insurance, by providing how and in what manner terms and conditions may be incorporated in the contract, and so far as this case is concerned, ''shall not be considered a part of the policy, or of the contract between the parties'' for the reason that the same is not attached to it.

The failure to pay an assessment which is not a legal one can not work a forfeiture of the policy, hence the failure of the insured to pay assessments Nos. 801 and 802,

5. which under the law in force at the time the same were levied were unauthorized did not void the certificate.

The instructions tendered by appellant, and the refusal to give which is complained of here, were upon the theory that the Kentucky statute was not applicable, and that it was only necessary for appellant to show the levy of the assessment under the amended by-laws of 1899 and the failure of the member to pay, to defeat the recovery. For the reasons heretofore stated, the instructions tendered by appellant were rightly refused by the trial court.

It is further contended by appellant that the trial court, should have told the jury by proper instructions what the decisions of the court of appeals of the state of Kentucky meant. In this contention the appellant is correct, but the jury found in accordance with the true interpretation of said decisions, and appellant was not harmed by a refusal to give the instructions on the subject.

It is further contended by appellant that as the insured had for a long number of years paid the increased assessment, that therefore he had notice of the increased assessment and tendered an instruction to that effect. It is not a question of the proper notice that assessments had been made, but the question is, Has any lawful assessment been made? Even if the insured had paid for a long number of years, an increased assessment, not authorized by law, this would not estop him from refusing another assessment, which was fixed by an amendment to the by-laws, which was not made according to the provisions of the statutes of the state. Neither was he required to tender the amount originally stipulated. *Fort* v. *Iowa Legion of Honor* (1910), 146 Iowa 183, 123 N. W. 224.

It is insisted by appellant that the state of Kentucky has repealed §679, *supra,* in so far as it applies to benevolent societies and therefore that its failure to attach the amendment to the certificate was not fatal to the amendment. The repeal was in 1906, two years after the death of Logsdon, and hence does not affect this case. This repeal could in no wise affect the rights of appellees.

On the death of Logsdon, appellees took a vested interest in the certificate under the law in effect at the time of the death of the insured. The court of appeals of the state of Kentucky has so construed this law. *American Guild* v. *Wyatt* (1907), 125 Ky. 44, 100 S. W. 266. To hold otherwise would be to do just what appellant claims could not be done, that is to impair the obligations of a contract.

No reversible error is presented by the record, and the judgment of the lower court is affirmed.

NOTE.—Reported in 108 N. E. 587. As to the law of beneficial associations, see 19 Am. St. 781. As to the questions arising under insurance policies where there is a conflict of laws, see 63 L. R. A. 833; 23 L. R. A. (N. S.) 968; 52 L. R. A. (N. S.) 275. As to the binding effect on a member of a benefit society of a by-law inconsistent with his contract of membership, see 20 Ann. Cas. 929. See, also, under (1) 29 Cyc. 68; (2) 11 Cyc. 750; (3) 8 Cyc. 971; (5) 29 Cyc. 170; (6) 38 Cyc. 1811; (7) 29 Cyc. 104; (8) 8 Cyc. 929.