GEORGE PULOS AND ROSE MARIE PULOS *v*. JAMES A. JAMES, A/K/A JIM A. JAMES AND BARBARA E. JAMES; AND JAMES A. JAMES A/K/A, JIM A. JAMES AND BARBARA JAMES *v*. BYRON E. BAILEY AND ROSE MARIE BAILEY.

[Nos. 771S216, 771S211. Filed October 30, 1973.]

*Louis F. Cohen, Virginia Dill McCarty,* of Indianapolis, for appellants Pulos. *James E. Nickels,* of Indianapolis, for appellants James.

*Bulen & Castor, James R. Nickels,* of Indianapolis, for appellees James. *Dale McLaughlin,* of Indianapolis, for appellees Bailey.

PRENTICE, J.—These cases are concerned with the same subject matter and determined by the same constitutional proscription. Accordingly, they are here consolidated. Although other issues have been raised, both cases must be governed by a determination of the constitutionality of the 1965 amendment to the 1907 general act covering disannexa-

tion and a vacation of streets, highways and plats. The statute with which we are here concerned is § 1, ch. 277 of the Acts of 1965, which was re-enacted with but slight changes by § 609, ch. 239 of the Acts of 1969, 1972 Supp., 1963 Repl. Burns Ind. Ann. Stat. § 48-916, IC 18-5-10-41. The 1965 statute was as follows:

"SECTION 1. Acts of 1907, c. 279, s. 12, as amended by Acts 1923, c. 140, s. 1, is further amended to read as follows: Sec. 12. In cities which have a board of public works, all proceedings authorized in this act to be begun before such board or the common council of such city shall be begun before such board of public works. If any city have no board of public works, then such proceedings shall be begun before the common council thereof.

In counties in which there exists a city of first class, the metropolitan plan commission of such county or the planning committee thereof if so designated by the commission, shall have the power and authority to vacate any plat or part thereof or approve replatting where such vacation or replatting does not affect any street, highway, alley or public easement, or where such public easement has been waived or released prior to the approval of the plan commission or the plat committee thereof. The vacation of a plat or any part thereof may include the vacation, change or amendment or any recorded covenant or restriction applying thereto which was contained in the original plat. Where such vacation or replatting includes the vacation or relocation of any street, highway, alley, public ground or way or part thereof, or any easement not released or waived by a public utility prior to the hearing, then the approval of the metropolitan plan commission of such county or the plat committee thereof if so designated, shall be obtained as a condition of validity prior to final approval by the board of public works of such county.

SEC. 2. Whereas an emergency exists for the immediate taking effect of this act, the same shall be in full force and effect from and after its passage."

The 1965 amendment was in effect at the time of the action of the Planning Committee of the Metropolitan Plan Commission, which has been questioned by these proceedings. The amendment rendered the act applicable to cities of the first class and provided that in counties wherein such a city exists,

the power and authority to vacate plats or parts thereof should vest in the Metropolitan Plan Commission of such county or the plat (planning) committee thereof if so designated by the commission. It further provided, as does the 1969 Act, for the vacation of covenants or restrictions applying to subdivided real estate where such restrictions are contained in the recorded plat, and this is the portion of the act with which we are concerned in these cases.

In *Pulos* v. *James*, Pulos', the plaintiffs (appellants) instituted the action by way of a complaint for declaratory judgment. They were the owners of real estate within the recorded plat of "Meadowview Addition" in Marion County, which county contains the City of Indianapolis, a city of the first class. James', the defendants (appellees) subsequently became the owners of two lots within the same plat. The recorded plat contained restrictive covenants providing among other things, the following:

"3. All parcels in the tract shall be known and described as residential parcels. No structure shall be erected, altered, placed or permitted to remain on any parcels other than one detached single family dwelling not exceeding two stories in height and a private garage for not more than two cars.

\*  \*  \*

12. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1970, at which time said covenants shall be automatically extended for a period of ten years, and for successive periods each ten years thereafter, unless by a vote of the majority of the owners of parcels it is agreed to change the said covenants in whole or in part, or to terminate them.

13. If the parties hereto, or any of them or their heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said Meadowview Addition to prosecute any proceeding at law or in equity against the person or persons violating or attempting to violate any such covenant, or to recover damages for such violation.

14. Invalidation of any one of these covenants by judgment or court order shall in no wise affect any of the other provisions, which shall remain in full force and effect."

The defendants' lots adjoined each other and were economically adaptable to and more valuable for commercial use. They petitioned the Plat Committee of the Metropolitan Plan Commission of Marion County, and in response thereto, the committee vacated the restrictive covenants. It is not apparent from the record before us whether the restrictions were vacated as to the entire subdivision or merely as to the defendants' lots, but such is immaterial to our determination. The executive director of the Metropolitan Plan Commission appealed the decision to the commission, and the commission denied the appeal.

It should be noted at the outset that we are here concerned only with the constitutionality of that portion of the aforementioned act which purports to vest the authority to vacate subdivision restrictions in the plan commission or its committee. We are not concerned with considerations that, under some circumstances, warrant a court of equity in refusing to enforce such covenants. If the provision is constitutional, the acts of the commission and its committee are valid and relieve the defendants' lots from the burden of the restrictive covenants. If it is unconstitutional, the acts of the commission and committee are void, and the covenants remain in full force and effect.

The trial court granted the defendants' motion to dismiss the complaint for failure to state a claim. Plaintiffs refused to plead over and judgment for the defendants was entered. The plaintiffs' motion to correct errors was overruled, and this appeal followed.

A restrictive covenant in a plat is a covenant running with the land. *Sorrentino* v. *Cunningham* (1942), 111 Ind. App. 212, 39 N. E. 2d 473, 478. It creates a property right in each grantee and subsequent grantee of a lot in the plat subject to the restriction, *Wischmeyer* v.

*Finch* (1952), 231 Ind. 282, 107 N. E. 2d 661. That property right cannot be taken for a private use, as has been purportedly accomplished here by the defendants pursuant to the statute in question.

Article I, Sections 21 and 23 of the Indiana Constitution read as follows:

> "Section 21: No man's particular services shall be demanded, without just compensation. No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

> "Section 23: The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The due process clause of the Fourteenth Amendment to the United States Constitution reads as follows: "Nor shall any state deprive any person . . . of property, without due process of law." These sections of our Indiana Constitution and the United States Constitution prohibit the taking of private property for a private use. *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465; *Logan* v. *Stogsdale* (1890), 123 Ind. 372, 24 N. E. 135; *Stewart* v. *Hartman* (1874), 46 Ind. 331; *Wild* v. *Deig* (1873), 43 Ind. 455.

In the *Fountain Park* case, the General Assembly had purported to give the power of eminent domain to a Chautauqua Association, the purpose of which the court found not to be substantially related to a public use. The act was held a violation of both the Indiana and Federal Constitutions:

> "The constitutional inhibition against taking private property for public use without compensation [Indiana provision] by necessary implication prohibits taking private property for private use, . . . and a taking for private use . . . is also a deprivation of property without due process of law [Federal provision]. . . ." (199 Ind. 108, 155 N. E. at 469).

The *Logan, Stewart* and *Wild* cases all invalidated statutes authorizing private persons to take property by eminent domain for a private way.

No Indiana case has been found in which the exact question raised herein has been decided. However, it was held in *Capp* v. *Lindenberg, etc. et al.* (1961), 242 Ind. 423, 178 N. E. 2d 736 that a board of zoning appeals had no authority under the ordinance creating it to grant the variance sought. In that case, we further quoted with approval from 58 Am. Jur., Zoning § 4, p. 942, "* * * a zoning law cannot constitutionally relieve land within the district covered by it from lawful restrictions affecting its use, imposed by covenants." and from Bassett, Zoning (1940), p. 185, "Zoning regulations and private restrictions do not affect each other."

In the recent case of *Suess* v. *Vogelgesang* (1972), 151 Ind. App. 631, 281 N. E. 2d 536 (Transfer denied November 1, 1972), our Court of Appeals, held that the issuance of a zoning variance was not invalid merely because its utilization may be in violation of private restrictive covenants, but this was not tantamount to saying that the variance grant would or could negate the restriction. In fact, the court there carefully pointed out that zoning restrictions imposed an obligation upon the property owner to the community and that private covenants indicated the measure of his obligation to another private party.

Massachusetts is a jurisdicion whose cases have been quoted and relied upon by the courts of this state in cases concerning the enforcement of restrictions and covenants. *Elliot* v. *Keely* (1951), 121 Ind. App. 529, 539, 98 N. E. 2d 374; *Bachman* v. *Colpaert Realty Corp.* (1935), 101 Ind. App. 306, 194 N. E. 783. We think the issue has been properly and well treated by its Supreme Court in *Riverbank Improvement Co. v. Chadwick* (1917), 228 Mass. 242, 117 N. E. 244. The court there held invalid a statute which authorized a land court to determine whether existing restrictions on land were valid but should not be enforced because they were inequitable. Upon

such a determination, the court was authorized to assess damages to those persons otherwise entitled to enforce the restrictive covenants and who would be damaged by their non-enforceability. When the damages assessed were paid in to the land court, the land would be registered free from the restrictions. The land court in this case had purported to remove restrictions concerning minimum cost of buildings to be erected and prohibiting use for mercantile purposes or apartment houses. The desirable residential section of the City of Boston had moved beyond the platted area to the suburbs. Therefore, the restricted area was not salable for the residential uses for which the restrictions were designed, and the largest part was vacant. Nevertheless, the court found the Act invalid:

> "An equitable restriction, such as has been found to exist in the case at bar, has been said to be 'an easement or servitude in the nature of an easement,' . . . 'a right in the nature of an easement,' . . . and an 'interest in a contractual stipulation which is made for their common benefit.' . . . It is an 'equitable servitude' as to which commonly no action at law is open. . . . It was said in Bailey v. Agawam National Bank, 190 Mass. 20, 76 N. E. 449, 3 L. R. A. (N. S.) 98, 112 Am. St. Rep. 296:

>> 'The so-called equitable restriction results from the fact that equity will enforce the agreement against those taking with notice in favor of the then owner of the land to be benefited. Equity does not enforce the agreement because there is an equitable restriction.'

> "In Sprague v. Kimball, 213 Mass. 380, 382, 100 N. E. 622, 624 (45 L. R. A. [N. S.] 962, Ann. Cas. 1914A, 431), occur these words:

>> 'It is not a covenant running with the land at law, but it is an equitable easement or servitude passing with a conveyance of the premises to subsequent grantees. Parker v. Nightingale, 6 Allen, 341 [83 Am. Dec. 632]. * * * While only the mode of use is regulated and the fee passed, yet the estate is incumbered with the inherent restrictions which create an equitable enforceable interest.'

> "It follows from these and other decisions that an equitable restriction is a property right in the person in favor of

whose estate it runs or to which it is appurtenant. That has been expressly recognized or impliedly assumed in numerous decisions and is not now open to doubt. * * * The extent of its enforceability and its value under varying circumstances are questions quite apart from its inherent nature as between private owners. See * * * Wharton v. United States [1 Cir.], 153 Fed. 876, 83 C. C. A. 58.

"It is a necessary corollary of these decisions defining the nature of equitable restrictions that they are real estate. They are part and parcel of the land to which they are attached and with which they pass by conveyance. * * *.

"The effect of the instant statute as applied to these facts is to extinguish this right as affecting the land described in the petition so far as found to exist in the respondents, *not for any public use nor to subserve any public end, but merely for the benefit of other private landowners whose estates are less valuable by reason of the existence of the right and who could make more advantageous and profitable uses of their own land if these incumbrances were out of the way.* It has been found expressly that the enforcement of the restrictions would 'not be injurious to the public interests.' That finding must be accepted as final and true. Each of the respondents is to be forced against his will to surrender his right in the nature of an easement in the land of another when it is not 'inoperative, illegal or void' according to the decision of the land court. He will be obliged to make surrender of this real estate right and accept money damages in place of it, *not because demanded by the public interests, but because a neighbor desires it for his private aims.* This is plain from the bald statement of the facts. * * * It was said in Hairston v. Danville & Western Ry., 208 U.S. 598, 606, 28 Sup. Ct. 331, 334 (52 L. Ed. 637, 13 Ann. Cas. 1008) : (Emphasis ours)

*'The courts of the states, whenever the question has been presented to them for decision, have without exception, held that it is beyond the legislative power to take against his will, the property of one and give it to another for what the court deems private uses, even though full compensation for the taking be required.'* Madisonville Traction Co. v. St. Bernard Traction [Mining] Co., 196 U.S. 239, 251, 25 Sup. Ct. 251, 49 L. Ed. 462. (Emphasis ours)

"The finding of the land court as to the enforcement of the restrictions here in question is framed in apparent accordance with the principles of law laid down in Jackson v. Stevenson, 156 Mass. 496, 31 N. E. 691, 32 Am. St. Rep.

476. That principle in substance is that a court of chancery will refuse at the suit of the owner of the restrictions to enforce equitable restrictions when 'it would be oppressive and inequitable to give effect to the restrictions,' but will assess the damages caused by the interference of which complaint is made. A property right in the nature of real estate incident to the ownership of land, even though it cannot be enforced specifically in equity, is a property right different in kind from money damages assessed for the extinguishment of that property right. It was said in Atty. Gen. v. Williams, 174 Mass. 476, 480, 55 N. E. 77, 78 (47 L. R. A. 314):

> '*If the statute is merely for the benefit of individual property owners, the purpose does not justify the taking of a right in land against the will of the owner.*' (Emphasis ours)

"That principle is precisely applicable to the statute at bar. If the use for which the property is taken is not public, it is of no consequence that ample provision is made for compensation to the owner.

"It may be that it would be wiser for the respondents to receive money damages and submit to the extinguishment of their other property right. But that fact, if it be a fact, is wholly irrelevant. By article 10 of the Bill of Rights of the Constitution, the right is guaranteed to 'each individual of the society' 'to be protected by it in the enjoyment of his life, liberty, and property, according to standing laws.' In the continued enjoyment of these three rights when defined and established by law the individual is not obliged to submit to the judgment of court or Legislature that he ought to hand them over for compensation to some one or more of his fellows in their private interest. He is secure under the Constitution in his right to keep what is his own, even though another wants it for private uses and may be willing to pay more than its value. * * *." (228 Mass. at 246-248, 117 N. E. at 245-246).

The question in the Massachusetts *Riverbank Improvement Co.* case was more difficult than this case because the land there was not usable for residential purposes. Here, there is no such evidence. The legal question then is identical to the question presented in this case, and should be answered in the same way.

In federal courts, a restrictive covenant is considered a

protected property right, *Chapman* v. *Sheridan-Wyoming Coal Co.* (1950), 338 U.S. 621, 70 S. Ct. 392, 94 L. Ed. 393, and therefore is within the protection of the due process clause which prohibits a taking of private property for a private use.

Here the plaintiffs' property rights in the covenants of Meadowview have been purportedly taken and destroyed by the defendants pursuant to a statute of the State of Indiana for the sole use and benefit of the defendants, i.e., their use of their lots in Meadowview for business rather than residential purposes. This statute violates both the Indiana and the United States Constitutions; and the trial court's dismissal of the complaint and judgment for the defendants, based upon its findings and conclusions of law that the Act is constitutional, should be reversed.

Even if we should attempt to uphold the constitutionality of the provision in question upon the premise that the commission was authorized to act thereunder only for the public good and not to benefit private individuals, we would, nevertheless be without support. No provision has been made to compensate those owners of other lots within the plat. It was for their benefit that the restrictive covenants were imposed. Their right to have them enforced is a property right and may not be taken from them without just compensation. Thus, even if it were maintained that the vacation of the restrictions was for the public good, we would run afoul of sections 21 and 23 of Article I of our state constitution, *supra,* and the due process clause of the Fourteenth Amendment to the Constitution of the United States, *supra.*

We find no merit to the defendant's claim that the plaintiffs took their rights in the plat subject to the provisions of the statute. The restrictions were imposed with the recording of the plat in 1953. The plaintiffs acquired their lot and their rights in the covenants in 1963. The act in question was not in effect until 1965. Although the defendants correctly state that the Legislature may pro-

hibit contracts that are against public policy, it, nevertheless, may not impair previously legal contracts after the rights thereunder have vested. *Supreme Council Catholic Knights of America* v. *Logsdon* (1915), 183 Ind. 183, 108 N. E. 587.

Defendants further argue that since the courts, under the statute of 1907, had the right to vacate plats, the amendment of 1965 merely extended the jurisdiction in the case at bar to the plan commission. This, however, does not take into account that the 1907 Act did not purport to authorize the vacation of restrictions. The mere fact that restrictions are inscribed upon the plat does not make them subject to commission approval. They are a matter of private concern and not for the public's use and benefit, as are streets and utility easements. They are frequently inscribed upon plats, but this is a matter of convenience only. They are contractual. Mutuality of covenant and consideration exists between the several owners of land made subject to a scheme of improvements. *Bachman* v. *Colpaert Realty Corp., supra.* Their character is not altered by the manner of their documentation.

In *James* v. *Bailey,* the issues were drawn upon a complaint to enjoin the threatened violation of the same restrictive covenants with which we were concerned in *Pulos* v. *James.* The complaint also asked for a declaratory judgment upon the statutes under which the plat committee had purported to vacate the covenants. The James' (appellants) were again the defendants, the action having been filed by Plaintiffs (Appellees), Baileys, following the aforementioned action by the plat committee and the plan commission. Judgment was rendered declaring the covenants to be in full force and effect and enjoining the defendants from violating them. This appeal followed the trial court's overruling of the defendants' motion to correct errors. It presents but one material issue not hereinbefore treated with respect to the *Pulos* case.

The defendants contend that the trial court lacked subject matter jurisdiction, in that the plaintiffs' remedy was by way

of certiorari to review the decision of the plan commission. In view of our holding in *Pulos* v. *James,* this issue appears to be moot. Nevertheless, we will meet the question. Assuming, arguendo, the defendants' position to be correct, it could affect only the second theoretical paragraph of the complaint. With respect to the first paragraph, the subject matter was the restrictive covenants. The court clearly had jurisdiction of contracts between the parties and equitable jurisdiction to issue an injunction under the circumstances alleged. True, it was necessary for the court to determine the constitutionality of the statute under which the administrative agency had purported to act and, in consequence, the legality of such acts. However, this did not amount to a review of such acts such as would be had by way of appeal. This question was passed upon by our Court of Appeals in *Suess* v. *Vogelgesang, supra,* where Judge Sullivan writing for a unanimous court said: "The appropriate remedy of persons deeming themselves aggrieved by violation of a restrictive covenant is the injunctive relief afforded by equity or an action in damages."

The judgment of the trial court in *Pulos* v. *James* is hereby reversed, and the court is directed to overrule the defendants' motion to dismiss.

The judgment of the trial court in *James* v. *Bailey* is affirmed.

Arterburn, C.J. and DeBruler and Hunter, JJ., concur; Givan, J., dissents.

NOTE.—Reported in 302 N. E. 2d 768.