**Harold E. PEPINSKY, Roberta McCloskey, Appellants,**

v.

**The MONROE COUNTY COUNCIL, Appellee.**

No. 384 S 80.

Supreme Court of Indiana.

April 4, 1984.

Guy R. Loftman, Colman & Loftman, Professional Corporation, Bloomington, for appellants.

James R. Trulock, County Atty., Robert D. Mann, Richard S. Harrison, Cotner, Mann & Chapman, Bloomington, for appellee.

PIVARNIK, Justice.

This case involves an appeal from an interlocutory order entered by Special Judge Samuel R. Rosen in the Monroe Superior Court. The trial court determined that the matter raised by the plaintiffs, Harold E. Pepinsky and Roberta McCloskey, involved a public lawsuit and that the plaintiffs were unlikely to prevail on the open door law issue they raised in the complaint. The trial court required the plaintiffs to post a bond of $715,000.00 within ten days or suffer dismissal of the suit. When the deadline passed without any bond being filed, the trial court ordered the suit dismissed. The plaintiffs originally perfected an appeal from the interlocutory order to the Court of Appeals under No. 1–284 A 51, but the appeal was transferred to this Court pursuant to Ind. R.App.P. 4(A)(10) as a result of both parties' Verified Petitions and the granting thereof on March 8, 1984. The cause is docketed in this Court under No. 384 S 80.

The three issues presented for our consideration are:

1. whether the trial court erred in finding that this lawsuit constitutes a public lawsuit within the meaning of Ind.Code § 34–4–17–1(b) (Burns Supp.1983);

2. whether the trial court's decision that the Monroe County Council had complied with the notice provisions of the Indiana Open Door Law Act, Ind.Code § 5–14–1.5–1

*et seq.* (Burns Repl.1983), is contrary to the law in light of the evidence presented; and,

3. whether the provisions of Ind.Code § 34-4-17-5 (Burns Supp.1983), requiring appeal to the Supreme Court in the same manner as is provided in a petition for mandate or prohibition within ten (10) days of the trial court's order, is constitutional.

Plaintiffs Pepinsky and McCloskey brought this action in the Monroe Superior Court seeking redress under the Indiana Open Door Law Act, Ind.Code § 5-14-1.5-1 *et seq.* The controversy stems from the proposed construction of the "Justice Building" which would house a new jail, the various courts of Monroe County, and offices of the law enforcement officials and court employees. In order to finance and construct the Justice Building, the Monroe County Board of Commissioners and the Board of Public Works for the City of Bloomington each tentatively approved a lease between themselves, as lessees, and the Monroe County Jail, Law Enforcement and Governmental Space Building Corporation (Building Corporation), as lessor. The Daily Herald-Telephone published a news article reporting the tentative approval of the lease and stated that the Monroe County Council would conduct a public hearing on the project on November 17, 1983. The Monroe County Council was named as defendant in this suit because the plaintiffs alleged that the meeting held on November 17 was in violation of the Open Door Law Act. Specifically, Pepinsky and McCloskey alleged that proper notice of the date, time, place, and agenda of the meeting were not given. Pepinsky and McCloskey are opposed to the number of jail cells to be built in the Justice Building and disagree with other aspects of the financing and construction of the building. Pepinsky publicly stated that he hoped the lawsuit would delay construction of the building and that the process would be subjected to a new round of public hearings. Pepinsky attended the meeting on November 17 and spoke against the plans for the Justice Building. Unlike Pepinsky, McCloskey did not attend the November 17th meeting nor did she attend any other public meeting concerning

the Justice Building prior to the filing of this lawsuit.

The trial court granted a change of venue from the county upon the request of the plaintiffs and the parties selected Greene County as a result of the striking process. Shortly thereafter the Monroe County Council filed a Motion to Reconsider and Resume Jurisdiction, asking the Monroe Superior Court to decide whether the matter was truly a public lawsuit. The trial court decided that the suit was indeed a public lawsuit and resumed jurisdiction.

The Monroe County Council then requested that the trial court decide whether it was appropriate for the plaintiffs to file a bond in order to pursue the lawsuit and if so, to determine an appropriate amount for that bond. After a lengthy hearing, the Monroe Superior Court, Special Judge Rosen presiding, decided that the matter was a public lawsuit and that a reasonable bond to be filed by the plaintiffs to cover the defendant's damage and costs pursuant to Ind.Code § 34-4-17-5 was $715,000.00. The plaintiffs were ordered to file the bond with sufficient surety within ten (10) days of the date of the order, February 6, 1984. On February 17, 1984, no bond having been filed, the trial court dismissed the lawsuit.

I

Appellants, plaintiffs below, first argue that the trial court erred when it decided that this cause of action was a public lawsuit. Ind.Code § 34-4-17-1 *et seq.* is entitled "Public Lawsuits—Testing Public Improvements." Section 1(b) reads as follows:

"Public lawsuit" shall mean any action whereby the validity, location, wisdom, feasibility, extent or character or construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing, and shall mean any action to declare invalid or

enjoin the creation, organization or formation of any municipal corporation. This definition, as used in this chapter, shall not be construed to broaden any right of action as is now validly limited by applicable law.

Section 5 reads as follows:

INTERLOCUTORY HEARING.—At any time prior to the final hearing in public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff shall post a bond with surety to be approved by the court payable to defendant for the payment of all damages and costs which may accrue by reason of the filing of the lawsuit in the event the defendant prevails. A hearing shall be had on such petition in the same manner as the hearing on temporary injunctions under IC 34-1 [34-1-1-1—34-1-67-4]. If at the hearing the court determines that the plaintiff cannot establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails. In the event such bond is not filed by the plaintiff with sureties approved by the court within ten [10] days after such order is entered the suit shall be dismissed. Either plaintiff or defendant may appeal such order to the Indiana supreme court within such ten [10] day period by notice of appeal and a statement of error in the same manner as is provided in a petition for mandate or prohibition. The supreme court may stay the lower court order pending its own decision, may set a bond to be filed by the plaintiff in connection therewith, may modify the order of the lower court, or may enter its order as a final order in a case. In the event no bond is filed as provided in this section, the public lawsuit shall be dismissed and no court shall have further jurisdiction of the public lawsuit or any other public lawsuit involving any issue which was or could have been raised therein. Provided, that nothing in this section is intended to create nor shall it be construed as creating, any additional cause of action on the part of any municipal corporation, person, partnership, or corporation, unless the defendant is required to and does post bond.

It is well established that the purpose of the public lawsuit statute and its implementation is "to protect the public against a 'flood of harassing litigation' which obstructs and delays public improvement at prohibitive costs and from the 'financial damage of completely nonmeritorious litigation.'" *Johnson v. Tipton Community School Corp.*, (1970) 253 Ind. 460, 464, 255 N.E.2d 92, 94, quoting *State ex rel. Haberkorn v. DeKalb Circuit Court*, (1968) 251 Ind. 283, 241 N.E.2d 62. In *Johnson*, Justice DeBruler pointed out for this Court that "[t]he requirement that the plaintiff must introduce evidence sufficient to show the trial court that there is a substantial question to be tried accomplishes those purposes adequately by eliminating merely harassing suits or completely non-meritorious litigation." 253 Ind. at 465, 255 N.E.2d at 94. Similarly, in *Haberkorn, supra*, a *per curiam* decision, this Court wrote:

It is true under the state law prior to adoption of [34-4-17-1 *et seq.*] a determined plaintiff could keep a suit in being from two to six years; and in many cases the mere filing of the action delayed beyond saving the intricate planning of the project regardless of the merits of the action.

If litigation is filed and a legal opinion cannot be given, bonds will remain unsold or undelivered. If this persists for any project for more than six months to a year, construction contractors in inflationary times cannot stand by their bids, and the project as planned and the litigation opposing it became moot. In the meantime taxpayers, in those cases where the endeavor is legally correct, have suffered substantially by increased construction costs.

251 Ind. at 289, 241 N.E.2d at 66.

There is a valid reason for requiring the party bringing the public lawsuit action to

file a bond to cover the defendant's damages and costs. Justice Hunter, writing for the majority in *State ex rel. Sekerez v. Lake Superior Court*, (1975) 263 Ind. 601, 603, 335 N.E.2d 199, 200, noted that providing standing to sue for one who has experienced no legal injury in fact has inherent risks. This Court recognized the legislative intent behind the bond provisions of § 34-4-17-5: "The General Assembly was aware that Machiavellians—who would use the public lawsuit machinery to serve these ends while purportedly suing on behalf of their fellow citizens—live in Utopian communities. The General Assembly was also aware that those with pure hearts but empty heads might bring such lawsuits, although not in the public interest." *Id.* The public lawsuit statutes provide for a vehicle for the citizens and taxpayers of the community to be represented in a suit that questions the validity of the actions taken by the local government unit for public construction, but at the same time provide for a means to limit the delay and frustration of the public project by those citizens who would bring an action or a series of actions for the sole purpose of delaying or changing the financing and construction of the proposed project.

■ We now turn to decide whether this cause is a public lawsuit as the appellee desires, or a private lawsuit as appellants contend. Appellants cite our holdings in two cases, *City of Elkhart v. Curtis Realty Company*, (1970) 253 Ind. 619, 256 N.E.2d 384, and *Gariup v. Stern*, (1970) 254 Ind. 563, 261 N.E.2d 578, in support for their argument that this matter is a private lawsuit. We do not find such support for appellants in these cases. In *Curtis Realty*, the Curtis Realty Company brought suit against the City of Elkhart challenging a resolution adopted by Elkhart's Board of Public Works approving of the condemnation of land owned by Curtis Realty so that the City could construct a parking garage on the land. The suit sought judicial review pursuant to the off-street parking statute. The City of Elkhart filed a petition with the trial court alleging that the suit was a public lawsuit and requested

that the trial court set a hearing to determine whether Curtis Realty should post bond pursuant to § 5 of the Public Lawsuit Statute. The trial court determined that the suit was not a public lawsuit and denied the City's petition. In affirming the trial court, this Court stated in *Curtis Realty:*

The decisive aspect of this case is the proper characterization of appellee's legal status and its suit. The Public Lawsuit Statute provides that plaintiffs to a "public lawsuit" may sue either in their capacity as citizens or as taxpayers and that such suits are deemed class suits. Burns § 3-3303. Appellee cannot here be characterized merely as a taxpayer or citizen. Clearly, the appellee in this instance has maintained his suit as an individual landowner seeking to protect his individual property rights.

\*    \*    \*    \*    \*    \*

We hold, therefore, that the Public Lawsuit Statute does not apply to appellee's suit wherein it challenges, as a landowner, the legality of the board proceedings which are part of and so closely related to the exercise by the appellant of its power of eminent domain to take appellee's land. To hold otherwise would be of doubtful constitutional validity.

253 Ind. at 624, 256 N.E.2d at 387. Thus, this Court held that the action by Curtis Realty did not constitute a public lawsuit because the suit was brought by an individual landowner seeking to protect his private interest in property. Here, appellants point out that Curtis Realty Co. sought relief under statutory rights separate and apart from those applicable to public lawsuits and therefore argue that the controlling factor in determining whether a case constitutes a public lawsuit is whether the plaintiff brought action under "separate statutory authority." Appellee is correct in noting that the appellants misread our holding in *Curtis Realty*. A controlling factor in deciding whether a particular lawsuit is a public lawsuit is whether the plaintiff seeks to protect a public interest, such

as an individual landowner seeking to protect his individual property rights.

The same rationale was used by this Court in *Gariup, supra.* Gariup Construction Co. and three citizen taxpayers brought suit against the School City of Hammond alleging illegal bidding procedures in violation of public and private rights. Upon request of the School City of Hammond the trial court ordered plaintiffs to post bond or suffer dismissal pursuant to § 5 of the Public Lawsuit Statute. Plaintiffs did not post bond and their action was dismissed. On appeal plaintiffs argued that the trial court erred in finding that the suit was a public lawsuit. In affirming the trial court's decision, this Court stated:

A bidder's suit seeking judicial review of the bidding procedures utilized by a public authority does not fall within that category of suits questioning the validity of "construction, financing or leasing" as defined above. For these reasons we hold that a suit by a bidder on a public project seeking court review of bidding procedures is not "a public lawsuit." It is a private lawsuit.

However, the suit brought by these appellants is a combination of the private lawsuit of Alex Gariup and the Gariup Construction Co., Inc., and the public lawsuit of the plaintiffs Brown, Redden and Drake. The causes were commingled in each pleading paragraph and as such were not susceptible of separate treatment by the trial court. It was the decision of the plaintiff Gariup Construction Co., Inc., to so combine its suit and from this record it appears that this decision was based upon a desire to strengthen its position and to bring an attack upon a broader front. In these circumstances the trial court was correct in applying the Public Lawsuit Statute to this suit.

This Court held that in an action that combined and commingled a private lawsuit regarding the bidder on a public project and a public lawsuit by citizen taxpayers, the trial court was correct in treating the whole action as a public lawsuit since the two causes were so commingled in the complaint that they could not be treated separately.

Appellants further claim that this action was brought under the Open Door Law statute and the Public Lawsuit statute does "not extend to one seeking review under statutory authority," citing the Court of Appeals opinion, *Hatcher v. Board of Commissioners of Lake County,* (1972) 155 Ind.App. 27, 290 N.E.2d 801. *Hatcher* does make such a statement. In reading *Hatcher,* however, it is apparent that that statement was dicta in the Court of Appeals' opinion and, furthermore, the holding is inconsistent with this Court's holding in *Curtis Realty, supra,* and *Gariup, supra,* as well as a later decision by the Court of Appeals in *Franzen v. Carmichael,* (1980) Ind.App., 398 N.E.2d 1379. We therefore find that the dictum in *Hatcher,* stating to the effect that the Public Lawsuit statute does not extend to one seeking review under statutory law, is an improper statement of the law and does not aid appellants here. Ind.Code § 34-4-17-1(b) states that: "Public lawsuits shall mean *any* action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing ...." (emphasis added) In *Franzen,* plaintiffs attempted to bring action under the Public Lawsuit statute seeking to enjoin the Porter County Commissioners from giving effect to the lease of the Memorial Opera House, a county building. The County Commissioners argued that the plaintiffs had no standing to sue under the Public Lawsuit statute because the action was brought by a private group which had hoped to obtain use of the opera hall for itself. The trial court agreed and granted summary judgment in favor of the defendant County Commissioners. In affirming the trial court's decision, the Court of Appeals stated:

Although the Commissioner's actions in leasing the hall might form the proper basis for a public lawsuit, the plaintiffs have failed to establish such a suit by their claim. Johnson did not bring this action on behalf of all fellow citizens but rather on behalf of himself and a proposed civic group. *He comes before the court not as a citizen or a taxpayer but as an individual seeking redress for a wrong allegedly done to him and his proposed group of young players. This action is not a public lawsuit but a private one.* The trial court did not err in so finding and in entering summary judgment on that basis."

398 N.E.2d at 1382. (emphasis added)

We now turn to the complaint filed by Appellants here. Appellants claim they did not bring this action on behalf of all fellow citizens but solely on behalf of themselves. They are members of a group called Citizens for Jail Improvement, an organization described as an activist citizen's group generally concerned with the design and number of jail cells to be built in the Justice Building. They testified their motivation in filing this lawsuit was their concern that the public, generally, and the members of Citizens for Jail Improvement, specifically, be able to attend the council meeting of November 17, and to be heard on matters concerning the wisdom of erecting the Justice Building. At the bond hearing on February 2, 1984, Appellants stated they had two motivations in filing their complaint: 1) a concern about the public process; and 2) philosophical opposition to the plans for the new jail. Roberta McCloskey did not attend any meeting held by any of the local bodies involved in the development and proposed construction of the Justice Building. The only meeting attended by Harold Pepinsky was the one on November 17, 1983, in which he spoke in opposition to the project. The complaint filed by Appellants stated that the action taken by the council on November 17, 1983, was to incorporate the holding corporation to build the Monroe County Justice Building, approve the terms of the proposed county lease of the building, and approve an agreement with the City of Bloomington, Indiana. The complaint further recited that the meeting was conducted in violation of the provisions of the Indiana Open Door Law Act, Ind.Code § 5–14–1.5 and asked that the actions taken by the Monroe County Council in violation of the Indiana Open Door Law be declared void by the trial court. The question of whether the County Council failed to give proper notice about the November 17th meeting pursuant to the provisions of the Indiana Open Door Law Act will be considered subsequently in this opinion. The trial court entered lengthy findings of fact and conclusions of law in arriving at its judgment that this was a public lawsuit and that therefore the appellants would be required to post a bond in order to continue its action and delay progress on the project. The trial court's conclusion number 4 reads as follows:

"This action, filed pursuant to Ind.Code § 5–14–1.5–1, questions directly and indirectly the validity of the construction, financing and leasing of a public improvement by a municipal corporation, pursuant to I.C. 34–4–17–1(b) in that approval by the Monroe County Council is a necessary condition to a valid lease pursuant to I.C. 36–1–10–8, *et seq.* Thus, this suit in light of the remedy sought by the Plaintiffs and its effect on the sale of bonds, requires that it be declared a public lawsuit."

We agree with the trial court in such finding. This is not an action where the appellant's complaint seeks remedies regarding their personal or property rights. The action goes to the heart of the question concerning whether or not in the public interest the County Council should proceed with this project. The action was brought attacking the alleged failure of the public body to comply with the open door law. This is the type of action contemplated by the public lawsuit statutes. This cause could have as well been brought on a myriad of statutes attacking the procedures or compliances with these statutes and laws such as, but not limited to, manner in which

meetings were conducted, procedure in letting and accepting bids, letting of the contracts of construction providing for the certification of the contractor to do the actual work, requiring the contractor to post the proper performance bonds and a number of other procedures required to reach the ultimate goal of having the building constructed. The manner in which this action was brought by these parties and the subject of the complaint justified the trial court's decision that this was a public lawsuit.

## II

The appellants allege in the complaint that the Monroe County Council failed to give adequate notice of its meeting on November 17. They seek, pursuant to section 7(a) of the Indiana Open Door Law, Ind. Code § 5–14–1.5–1 *et seq.*, to void the action taken at the meeting:

> An action may be filed by any citizen of this state in any court of competent jurisdiction to enjoin continuing, threatened or future violations of this chapter, or to declare void any action taken at an executive session in violation of Section 3(a) [5–14–1.5–3(a) ] of this chapter or at any meeting of which notice is not given in accordance with Section 5 [5–14–1.5–5] of this chapter. The plaintiff in such suit need not allege or prove special damage different from that suffered by the public at large.

Appellants do not claim this was an executive session of the county council so they maintain their burden only if they can show that notice was not given in accordance with section 5 of the statute. Section 5 provides:

> (a) Public notice of the date, time and place of any meetings, executive sessions, or of any rescheduled or reconvened meeting, shall be given at least forty-eight (48) hours before the meeting; this requirement does not apply to reconvened meetings where announcement of the date, time and place of the reconvened meetings is made at the original meeting and recorded in the memoranda and minutes thereof, and there is no change in the agenda.

> (b) Public notice shall be given by the governing body of a public agency by:
>
> (1) Posting a copy of the notice at the principal office of the public agency holding the meeting or, if no such office exists, at the building where the meeting is to be held; and
>
> (2) Depositing in the United States mail with postage prepaid or by delivering notice to all news media which file by January 1 an annual written request for such notices with the governing body of the public agency.

■ An appeal from a negative judgment determines the standard of review by this Court. We will not reverse the judgment of the trial court unless it is contrary to law. In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the appellee together with all the reasonable inferences to be drawn therefrom. *Monroe County Community School Corp. v. Frohliger,* (1982) Ind.App., 434 N.E.2d 93. The judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Woodward Ins., Inc. v. White,* (1982) Ind., 437 N.E.2d 59; *Captain & Co. v. Towne,* (1980) Ind.App., 404 N.E.2d 1159; *Plumley v. Stanelle,* (1974) 160 Ind.App. 271, 311 N.E.2d 626.

■ The record shows that the Auditor posted a notice of the November 17th meeting on the bulletin board on the main floor of the county courthouse where notices of this type are customarily placed. The hearing was held on the second floor of the courthouse in the room where the council usually met. The notice on the bulletin board gave the time of the meeting and the subjects to be covered, including the subject involved in this lawsuit, but did not state in what room the meeting would be held, and did not indicate it was the meeting of the county council. The Auditor also notified the Bloomington Herald-Telephone about the meeting. The Herald-Telephone is a newspaper printed in and circulated throughout Monroe County. The meeting

and its proposed subject was publicized through news articles in the Herald-Telephone on November 7, November 8, and November 17. No witnesses testified they had hoped to attend the meeting but failed to do so because they did not have proper notice. Furthermore, Pepinsky himself attended the meeting and did not testify that he did not know about the meeting, did not know where it was going to be held or that it involved the subject matter discussed here. Approximately twenty-five members of the public and members of the news media attended the meeting and there was no complaint made by anyone, including the appellants, that notice had not been proper and the meeting should not proceed.

Appellant McCloskey did not attend the meeting nor did she testify her absence was due to the fact that she did not receive notice of it. Pepinsky testified that when he arrived at the courthouse, he tried to find and determine whether or not proper notice had been given. He said he saw no such notice in the courthouse. Pepinsky testified, however, that he did not examine the bulletin board on which the notice was posted in its customary place, nor did he inquire of any public official if, in fact, there had been notice given to the public. He did say there was no notice posted at the door of the meeting and this was true. The appellee contends here that although the posted notice of this meeting might not be a model for further application, it did provide the type of information necessary to insure the Monroe County Council would not be operating behind closed doors without public input or supervision. The council further contends that this could not be designated as a secret meeting nor was any business transacted at the November 17th meeting that had not been previously announced to the public. The trial court made the following findings of fact:

4. On and before November 17, 1983, the Monroe County Council did not have a principal office in Monroe County, Indiana. Its customary and usual meeting place was Room 203 (Commissioners and Council Meeting Room) in the Monroe County Courthouse.

      \*     \*     \*     \*     \*     \*

5. The public notice and agenda for the Monroe County Council meeting of November 17, 1983, was posted on the legal notice bulletin board near the south door of the Monroe County Courthouse and said notice was provided to the news media, all in compliance with the provisions of the Open Door Law, on November 11, 1983.

6. Prior to the meeting of the Monroe County Council on November .17, 1983, the Daily Herald-Telephone, the newspaper of general circulation in Monroe County, Indiana, notified the public of said meeting on November 7, November 8, and November 16, 1983.

In stating its purpose for the Indiana Open Door Law, the Legislature provided the following:

In enacting this chapter, the general assembly finds and declares that this state and its political subdivisions exist only to aid in the conduct of the business of the citizens of this state. It is the intent of this chapter that the deliberations and actions of public agencies be conducted and taken openly, unless otherwise expressly provided by statute, in order that the citizens may be fully informed. The purposes of this chapter are hereby declared to be remedial, and its provisions are to be liberally construed with the view of carrying out its policy.

Ind.Code § 5–14–1.5–1 (Burns Repl.1983).

It has been stated many times in reviewing a case where the trial court has made specific findings of fact that the court on appeal may not set aside the judgment unless it is clearly erroneous. In order to determine whether the judgment is clearly erroneous, the appellate court will consider only the evidence most favorable to the trial court's decision and reasonable inferences therefrom and will set aside the judgment only where the evidence leads to but one conclusion and the trial court has reached another. *Common Council of*

*City of Peru v. Peru Daily Tribune, Inc.,* (1982) Ind.App., 440 N.E.2d 726; *Barr. v. Sun Exploration Co., Inc.,* (1982) Ind. App., 436 N.E.2d 821. The trial court here was justified in finding that appellants had not carried their burden of showing by sufficient evidence that their claim is a substantial one and would entitle them to a temporary injunction. The appellee has shown that it complied with the provisions of both the Open Door Law Act and the Public Lawsuit Act and therefore the appellants were justifiably required to post a bond or suffer dismissal of their suit. The appellee sufficiently demonstrated that their damages would be a minimum of $715,000.00 should the delays occur because of the continuation of this lawsuit. Therefore, the trial court was correct in holding that the appellee had complied with Ind.Code § 5–14–1.5–1 *et seq.,* in setting a bond of $715,000.00, and in subsequently dismissing this lawsuit because the appellants failed to post the bond.

### III

Finally, the appellants claim Ind. Code § 34–4–17–5 is unconstitutional because it requires appeal to the Supreme Court within ten days of a ruling. We see no such problem presented here. This Court in *Haberkorn, supra,* Issue I, abrogated certain procedural aspects of section 5 of the Public Lawsuit statute and substituted the appellate rules relating to appeals from interlocutory orders. Accordingly, the appellant in *Haberkorn* was allowed thirty days to file a record of proceedings in order to perfect an appeal of the trial court's bond order. 251 Ind. at 294, 241 N.E.2d at 68. Furthermore, in *Gariup, supra,* this Court rejected the argument that section 5 is unconstitutional, holding instead that any procedural problems with the statute had been corrected by virtue of the Court's modification in *Haberkorn.* 254 Ind. at 577, 261 N.E.2d at 588. Also, as the appellee points out, the appellants were able to file the record and appellate briefs within the allowed time and they do not claim they were unduly prejudiced by the time limits or had been adversely af-

fected by them. "One cannot claim error for an abstract violation of a constitutional right where he shows no injury." *Haberkorn,* 251 Ind. at 294, 241 N.E.2d at 69. We see no error on this issue.

Finding no error, we affirm the trial court's judgment.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.