Leonard F. and Barbara H. DIBLE,
Appellant (Plaintiff below),

v.

CITY OF LAFAYETTE, Appellee
(Defendant below).

No. 79S02–9710–CV–619.

Supreme Court of Indiana.

June 9, 1999.

Jeffrey S. Dible, Attica, Indiana, Attorney for Appellant.

Jerome L. Withered, Angela M. Service, Withered & Corrigan, Lafayette, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Leonard and Barbara Dible sought declaratory and injunctive relief requiring the City of Lafayette to remove sewage and drainage structures it built on a City easement on the Dibles' property. The trial court granted summary judgment in favor of the City. The Court of Appeals reversed, holding the Dibles were entitled to pursue their claim as a public lawsuit. We conclude that if the Dibles are entitled to any relief, it is for inverse condemnation.

### Background

In 1971, Leonard and Barbara Dible purchased a residential lot in Tippecanoe County to build a home. A steeply banked and wooded ravine traversed the western end of

the lot. The Dibles' property was subject to two restrictive covenants recorded in 1968 reserving easements for "installation of utilities [as well as] drainage of storm water." A third covenant, recorded in 1970, prohibited the filling in or alteration of any natural ravine.

When the Dibles purchased this lot in 1971, there was a sewage lift station on a triangular utility easement, which extended onto part of the ravine. In 1978, the City of Lafayette accepted responsibility for the lift station from the original developers of the subdivision and became the holder of the utility easement on the Dibles' property. In 1992, the City determined that the lift station needed to be replaced and began construction on two projects to improve the subdivision's drainage and sewage systems that affected Dibles' property. The first project involved the installation of new storm sewer drains and the second entailed the construction of a new lift station on the site of the old station.

Throughout 1993, the Dibles objected orally and in writing to the City's work on both projects, which they considered an unlawful taking of their property. The Dibles also regularly contacted the Indiana Department of Environmental Management ("IDEM") to check on the status of the City's construction plans and permit applications. On March 29 and 30, 1993, in connection with the storm drain project, the City excavated most of the Dibles' ravine and cut down or destroyed seventeen large trees. On April 6, 1993, the City installed 105 feet of concrete storm sewer drain in the ravine and covered it with fill dirt. On April 12, 1993, the City obtained a permit to fill in the ravine to construct a building pad for the sewage lift station.

The City began excavation of the station site on June 27, 1994. On June 29, 1994, the Dibles filed this lawsuit, alleging that the construction exceeded the City's easement, violated restrictive covenants, and constituted an unlawful taking of the Dibles' property. The Dibles sought declaratory relief and requested that the trial court issue a preliminary injunction halting any additional construction. After several continuances and one change of judge, the trial court set a trial date of October 24, 1994. Trial was subsequently continued to February 13, 1995. However, the City completed construction of the lift station in January, 1995.

The Dibles amended their complaint to request a mandatory injunction requiring the City to remove those portions of the lift station that represented "an unlawful misuse of a utility easement and an unlawful taking of [Dible's] property without just compensation." The City moved for summary judgment in December, 1995, contending that (1) the Dibles had failed to exhaust their administrative remedies, and (2) the City had constructed the lift station entirely within existing drainage and utility easements and had not encroached on the Dibles' property. In opposition, the Dibles tendered an affidavit from an expert witness, who opined that the lift station's design and construction were "wasteful" and "of no public utility."

The trial court granted the City's motion for summary judgment.[1] The Dibles appealed and the Court of Appeals reversed. In its remand order, the Court of Appeals directed that the suit proceed as a public lawsuit. *Dible v. City of Lafayette*, 678 N.E.2d 1271 (Ind.Ct.App.1997).

### Discussion

In its petition to transfer, the City raises seven arguments, which we consolidate and restate as follows: (1) whether the Court of Appeals erred in reversing the trial court's grant of summary judgment in favor of the City; and (2) whether the Court of Appeals

---

1. In its ruling, the trial court entered the following findings:

> There is no question that there is a valid public purpose for the lift station in this case; that the project was properly authorized by the Lafayette Board of Public Works; and that the necessary approval and permits were obtained from the [Drainage Board] and [IDEM]....

> The public purpose of this project having been established, the Court may not substitute its judgment for that of the City and its agents in regard to the design, engineering, size or scope of the project. Injunctive relief to force the City to change the design, engineering, size or scope of the project is not appropriate.
> (R. at 42–43.)

erred in *sua sponte* remanding the cause for trial as a public lawsuit.

## I

The standard of review we apply today is the same as that applied by the trial court:

> Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant.

*Town of Syracuse v. Abbs,* 694 N.E.2d 284, 286 (Ind.Ct.App.1998) (citations omitted) (reversing denial of Town's motion for summary judgment where Abbs sought to permanently enjoin the Town from paving a street bordering her property), *transfer denied.* Where, as here, a defendant moves for summary judgment, the application of this standard of review changes slightly:

> When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense which bars the plaintiff's claim.

*Carroll by Carroll v. Jagoe Homes, Inc.,* 677 N.E.2d 612, 615 (Ind.Ct.App.1997) (citing *Moore v. Sitzmark Corp.,* 555 N.E.2d 1305, 1307 (Ind.Ct.App.1990)).

Accordingly, to prevail on its motion for summary judgment, the City need only have negated one element of the Dibles' claims for declaratory and injunctive relief. While we agree with the trial court that summary judgment for the defendant is proper here, we reach this conclusion on different grounds.[2]

When considering a motion for declaratory judgment,

> the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient. The determinative factor is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy.

*Volkswagenwerk, A.G. v. Watson,* 181 Ind. App. 155, 390 N.E.2d 1082, 1085 (1979) (citations omitted). "The use of a declaratory judgment is discretionary with the court and is usually unnecessary where a full and adequate remedy is already provided by another form of action. However, according to [Ind.Trial Rule 57], 'The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.'" *Id.* (citations omitted).

Requests for mandatory injunctions are subject to similar considerations.

> A mandatory injunction is an extraordinary equitable remedy which should be granted with caution. The plaintiff carries the burden of demonstrating injury which is certain and irreparable if the injunction is denied. In making its decision the trial court must weigh whether the plaintiff has an adequate remedy at law and the court must consider whether an injunction is in the public interest.

*Campbell v. Spade,* 617 N.E.2d 580, 583 (Ind. Ct.App.1993) (citations omitted); *see also City of Muncie v. Pizza Hut,* 171 Ind.App. 397, 357 N.E.2d 735, 738 (1976) (holding that injunctive relief will not lie where there is an adequate remedy at law). Hence, before ordering either declaratory or injunctive relief, a court is bound to consider alternate remedies available to the plaintiff.

The Dibles advance a wide assortment of bases for the relief they seek. Central

---

**2.** As outlined in note 1, *supra,* the trial court, in granting summary judgment, entered findings of fact and conclusions of law. This does not alter the nature of our review, nor are we bound by the trial court's specific findings of fact and conclusions of law. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* Thus, we employ our usual standard of review for cases disposed of by summary judgment. *Id.*

among these claims is the allegation that the City's construction of the sewage lift station—in particular the altering and filling in the natural ravine—misused easements, violated restrictive covenants running with the land, and constituted an unlawful taking of their property. (Appellant's Br. at 2).

▮▮▮▮ A restrictive covenant constitutes a compensable interest in land. *Pulos v. James*, 261 Ind. 279, 283, 302 N.E.2d 768, 771 (1973); *see also Adaman Mutual Water Co. v. United States*, 278 F.2d 842, 849 (9th Cir.1960) (concluding that under Fifth Amendment, a restrictive covenant imposes a duty running with the land and constitutes compensable interest). Such a covenant is not enforceable against an entity with the power of eminent domain—at least to the extent that the entity's use is for a public purpose.[3] But if that entity's use violates the restrictions of the covenant, there is a taking that entitles the owners to compensation. *See Carolina Mills v. Catawba County Bd. of Educ.*, 27 N.C.App. 524, 219 S.E.2d 509, 511 (1975) (enforcing a restrictive covenant against condemning authority would defeat the purpose of eminent domain, but use of property—whether purchased or condemned—violating a restrictive covenant, constitutes taking and entitles an owner to compensation); *Horst v. Housing Auth.*, 184 Neb. 215, 166 N.W.2d 119, 120 (1969) (holding that condemnation of land extinguishing restrictive covenant constitutes taking that entitles owners to compensation); *Town of Stamford v. Vuono*, 108 Conn. 359, 143 A. 245, 249 (1928) (holding that taking of property subject to restrictive easement entitles

an owner of property for whose benefit restriction is imposed to compensation); *see also* R.E. Barber, Annotation, *Eminent Domain: Restrictive Covenant or Right to Enforcement Thereof as Compensable Property Right*, 4 A.L.R.3d 1137, 1141 (1966).

▮▮▮▮ Given the public purpose of the City's lift station construction and other sewer improvements,[4] if and to the extent they constituted any "taking" of the Dibles' property, the Dibles would be entitled to just compensation.[5] But for this there existed an adequate legal remedy at their disposal: a suit for inverse condemnation. *See* Ind.Code § 32–11–1–12;[6] *see also VanKeppel v. County of Jasper*, 556 N.E.2d 333, 337 (Ind.Ct. App.1990) (finding that the appropriate remedy for a public taking of private land is a damage claim in inverse condemnation). Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the government entity subsequent to the taking. *Town Bd. of Orland v. Greenfield Mills*, 663 N.E.2d 523, 528 n.7 (Ind.1996) (citing *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984)); *see also Victor Oolitic Stone Co. v. CSX Transp., Inc.*, 852 F.Supp. 721, 724 n.1 (S.D.Ind.1994) (holding that property owners were not entitled to injunctive relief based on alleged taking where suit for compensation could be brought against county subsequent to taking). Because the facts of this case clearly present such an instance, we conclude that declaratory and injunctive relief is unavailable to the Dibles.[7]

---

**3.** In fact, the Dibles have argued that the City's construction constitutes an unconstitutional "private" taking in that the construction served no valid public benefit or purpose. We disagree. The Dibles do not dispute that the City constructed the sewage lift station entirely within its existing utility easement, nor do they dispute that replacing the existing lift station served an "obvious public purpose." Rather, they challenge the design and engineering aspects of the various sewage improvements, describing them as defective, superfluous and excessive. While rendering no opinion as to the validity of these criticisms, we find that they cast little doubt on the public purpose of the construction. In this regard, we agree with the trial court and conclude that the City made the improvements with a valid public purpose.

**4.** *See id.*

**5.** We are careful to note that we do not find it necessary to decide whether or not such a taking has occurred.

**6.** Ind.Code § 32–11–1–12 provides that a person having an interest in land which has been taken for public use without having been appropriated under the procedures set forth in Ind.Code § 32–11–1, et. seq., may proceed to have his damages assessed in accordance with that chapter.

**7.** The Dibles, however, contend they are entitled to an injunction because the City did not first proceed under the eminent domain statute. However, it is precisely such instances—where

This is not to say that municipalities may infringe upon the property interests of private citizens with impunity. Our precedents, and today's holding, clearly indicate that where a governmental entity violates restrictive covenants in furtherance of a public use or purpose, that violation is a taking for which compensation must be paid. Although injunctive relief may be necessary to remedy interference with landowner rights for a *private* purpose,[8] where an alleged taking occurs for what is clearly a *public* purpose, equitable relief is generally unavailable as a matter of law where an action for compensation can be brought subsequent to the taking.[9] Again, we make no determination as to whether there was a taking in this instance. However, to the extent there was a taking, an inverse condemnation action provides the proper remedy.

We find the Dibles' claims for declaratory and injunctive relief inappropriate under these facts. In both instances there exists an adequate alternative legal remedy. We hold that the trial court properly granted summary judgment in favor of the City.[10]

## II

After reversing the trial court's entry of summary judgment, the Court of Appeals remanded the cause with instructions to proceed as a public lawsuit. *Dible*, 678 N.E.2d at 1279. Although our holding in Part I, *supra*, essentially renders the issue moot, we nevertheless find it necessary to address the propriety of the Court of Appeals's *sua sponte* action.

A public lawsuit is "any action whereby the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of any public improvement by any municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin such construction, financing or leasing...." Ind.Code § 34-4-17-1(b) (1993).[11] The public lawsuit statute "was designed to protect municipalities from 'a flood of harassing litigation which obstructs and delays public improvement.'" *Huber v. Franklin County Community Sch. Bd. of Trustees*, 507 N.E.2d 233, 236 (Ind.1987) (quoting *Barnett v. City of Indianapolis*, 158 Ind.App. 1, 5, 301

---

interests in land are taken for public use without having been obtained under the eminent domain statute—for which Ind.Code § 32-11-1-12, authorizing inverse condemnation actions, is designed.

**8.** *See City of Muncie*, 357 N.E.2d at 737-38 (finding injunctive relief proper for a taking deemed private in nature because it served to benefit only a few local citizens); *cf. Pulos*, 302 N.E.2d at 771 (holding that a governmental entity cannot take private property for a private purpose).

**9.** *See Town Bd. of Orland*, 663 N.E.2d at 528 n.7 (holding that as a general rule, equitable relief is not available to enjoin an alleged taking of private property for public use when a suit for compensation can be brought).

**10.** We limit our holding to those issues necessary for the proper disposition of this matter. We note, however, that in addition to those addressed in the foregoing discussion, the Dibles have advanced several additional claims as bases for the relief they seek. Among these are charges that (1) the City violated the Dibles' due process rights, denying them any meaningful opportunity to contest the construction projects, and (2) the construction created an abatable statutory nuisance. We make no determination as

to the merit or propriety of these claims in future litigation, concluding simply that under the undisputed facts of this case, the Dibles are not entitled to declaratory and injunctive relief as a matter of law.

**11.** A plaintiff bringing a public lawsuit must have (1) proper legal status; (2) the proper type of lawsuit; (3) exhausted his or her administrative remedies; and (4) raised a proper objection at a public hearing. Ind.Code §§ 34-4-17-2, -8(b), (c) (1993). The Court of Appeals dealt with the Dibles' failure to exhaust their administrative remedies by concluding that such an effort would be futile because Dibles' "request for mandatory injunctive relief to remedy the alleged violation of his property rights and his rights of due process fall beyond the pale of IDEM's competency, expertise, and authority in issuing sewer permits." *Dible v. City of Lafayette*, 678 N.E.2d 1271, 1279 n.3 (Ind.Ct.App.1997), *transfer. granted*. The Court of Appeals also observed that Dibles' "alleged failure to adhere to IDEM's procedures [was] attributable to the City's flagrant abuse of those procedures...." *Id.* See note 10, *supra*, for this Court's discussion of Dibles' due process claims. These conclusions notwithstanding, we offer no opinion as to whether the Dibles satisfy the statutory requirements for bringing a public lawsuit.

N.E.2d 526, 528 (1973)). The ability to bring a public lawsuit as a class action neither confers new rights on the litigants nor affords them new remedies. *Id.* (citing *Hatcher v. Board of Commrs. of Lake County,* 155 Ind.App. 27, 290 N.E.2d 801 (1972)). The goal of the public lawsuit statute is to end costly serial litigation. *Id.*

■ The Court of Appeals, *sua sponte,* declared the Dibles' lawsuit a public lawsuit. We find the court's determination improper under these circumstances for two reasons. First, the Dibles have not brought suit in their capacity as taxpayers. Rather, they seek a mandatory injunction to protect their private property rights as created by a restrictive covenant. And as we have held previously, an action by an individual landowner seeking to protect his or her private interest in property does not constitute the basis for a public lawsuit. *See Pepinsky v. Monroe County Council,* 461 N.E.2d 128, 132–33 (Ind.1984) (stating that the controlling factor is whether plaintiff seeks to protect public or private interest); *see also City of Elkhart v. Curtis Realty Co.,* 253 Ind. 619, 627, 256 N.E.2d 384, 388 (1970) ("Public Lawsuit Statute does not apply to appellee's suit wherein it challenges, as a landowner, the legality of the board proceedings which are part of and so closely related to the exercise by the appellant of its power of eminent domain to take appellee's land."). Second, we believe it unfair to impose the requirements of the public lawsuit statute upon the Dibles where an adequate and less onerous remedy at law is available. We hold the Court of Appeals's directive to the trial court that the Dibles' action proceed as a public lawsuit erroneous.

### Conclusion

Having previously granted transfer, thereby vacating the opinion of the Court of Appeals pursuant to Ind.Appellate Rule 11(B)(3), we now affirm the trial court's grant of summary judgment in favor of the City.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.