Steven BUSE, Kathleen Payne, Stephen Payne, Peter Cetas, Tommy Johnson, Cynthia Johnson and Alan Stephens, Appellants–Plaintiffs,

v.

TRUSTEES OF the LUCE TOWNSHIP REGIONAL SEWER DISTRICT, Appellee–Defendant.

No. 74A05–1009–PL–590.

Court of Appeals of Indiana.

Aug. 9, 2011.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellant.

Jefferson A. Lindsey, Rockport, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Steven Buse, Kathleen Payne, Stephen Payne, Peter Cetas, Tommy Johnson, Cynthia Johnson, and Alan Stephens ("the Property Owners") bring this interlocutory appeal from the trial court's order in which the court concluded that their lawsuit against the Trustees of the Luce Township Regional Sewer District ("the Sewer District") is a public lawsuit that cannot proceed until the Property Owners have posted a $9 million bond. The Property Owners raise two issues for our review, which we restate as the following dispositive issue: whether the trial court properly concluded that four counts of the Property Owners complaint constitute a public lawsuit against the Sewer District pursuant to Indiana Code Section 34-6-2-124. We hold that the public lawsuit statute does not apply and, accordingly, we reverse and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

The Sewer District is a municipal corporation in Spencer County. Sometime before August of 2010, the Sewer District announced plans to lay a sewer line parallel and adjacent to the Property Owners'

properties. On August 6, 2010, the Property Owners filed an amended complaint seeking declaratory relief against the Sewer District's proposed construction. In particular, the Property Owners alleged as follows [1]:

6. All of the [Property Owners'] properties are connected to operational septic tank soil absorption systems.

7. The plaintiffs in this action seek declaratory relief concerning ultra vires acts by the [Sewer District] contrary to Indiana law and also contrary to the powers and duties of sewer districts as prescribed by I.C. § 32–26–5[,] which said acts will effect [sic] the [Property Owners'] property rights.

### COUNT I

\* \* \*

9. The [Sewer District] has taken action to require the [Property Owners] and other property owners within the district that are within three hundred (300) feet of the proposed sanitary sewer to tie into said sewer system and be responsible for paying all connection fees and monthly charges thereafter.

10. The actions of the [Sewer District] are contrary to provisions of I.C. § 13–26–5–2.5[,] which exempts properties [that] are served by functioning septic tank[ ] soil absorption system[s].

WHEREFORE, the [Property Owners] request this court declare that the actions of the [Sewer District] in failing to recognize these appropriate exemptions . . . to be unenforceable, ultra vires, and otherwise void. . . .

### COUNT II

\* \* \*

12. The [Sewer District] has adopted a policy whereby those property owners which have not granted their easements to the [Sewer District] will have to pay for the costs of installation of the grinder pumps, lateral connection for the pump to the sewer main and connection fees paid by the [Sewer District]. . . .

13. The [Sewer District] has also enacted a policy whereby those landowners, such as the [Property Owners,] who are not amendable [sic] to gratuitously granting easements over their properties for the sewer project, will be required to pay connections fees or greater connections fees than those landowners who voluntarily grant easements and th[ey] will also be required to pay for the costs of the grinder pump and installation of the lateral from pump to the sewer main.

14. This policy . . . is not authorized by Indiana law and is in direct contravention of the statutory authority for sewer districts.

WHEREFORE, the [Property Owners] request that this court declare the policies described herein to be contrary to Indiana law and unenforceable and otherwise require all landowners to be treated the same. . . .

### COUNT III

\* \* \*

16. The policy adopted by the [Sewer District] as described in Count II denies the [Property Owners] equal privileges and immunities under the Indiana Constitution pursuant to Article 1[,] § 23.

WHEREFORE, the [Property Owners] request that this court declare the poli-

---

1. Not discussed in this appeal are the Property Owners' additional claims for inverse condemnation, claims for which the trial court permitted the Property Owners to proceed against the Sewer District.

cies described herein to be contrary to Indiana law and unenforceable and otherwise require all landowners to be treated the same. . . .

\* \* \*

### COUNT V

\* \* \*

20. The [Sewer District] plan[s] as part of the sewer project to create "T" connections within the right-of-way adjacent to and parallel to the [Property Owners'] properties.

21. The [Sewer District] has adopted a policy to declare that each property owner whose property is adjacent to a "T" connection is declared to be benefiting from the sewer line regardless of whether the landowner has connected to said sewer line with the intent to then levy an assessment accordingly[,] notwithstanding the fact that the plaintiff/landowner is not connected to the sewer.

22. This policy as described herein is not authorized by Indiana law and is otherwise contrary to any authority granted under Indiana law to a sewer district[ ].

**WHEREFORE,** the [Property Owners] pray for an order of this court declaring said policy to be contrary to law[,] unenforceable[, and] void as a matter o[f]law. . . .

Appellants' App. at 23–26.

Thereafter, the Sewer District filed a motion for an interlocutory hearing and injunction, in which the Sewer District asserted that the Property Owners' claims qualified as a "public lawsuit" pursuant to Indiana Code Section 34–6–2–124. The Sewer District further asserted that the continuation of the Property Owners' suit would subject it to the loss of numerous funds, including the "Loss of Grant award-ed by the Indiana Office of Community and Rural Affairs . . . [i]n the amount of [\$9,147,000]. . . ." *Id.* at 30.

The trial court held a hearing on the Sewer District's motion and, on August 19, the court entered the following findings of fact and conclusions thereon:

6. [The Property Owners'] complaint primarily questions various actions which [the Property Owners] allege [the Sewer District] will take in the future. In Count I [the Property Owners] allege[ ] that ". . . the [Property Owners] and other property owners with the district" will be required to tie into the sewer system. This count questions the wisdom, validity, extent or character of the project as determined by the [Sewer District]. Count II questions the validity of certain alleged methods of financing the sewer project. Count III again questions these same policies under a theory that they are unconstitutional. Count V also addresses the validity of a financing decision and character of construction for the public improvement. . . .

7. Spencer County, on behalf of [the Sewer District], has received approval for a grant to defray the costs of the contemplated public improvements. Said grant is in the sum of [\$9,000,000]. [The Sewer District] must meet certain deadlines in order to receive this grant[,] which may be jeopardized by a public lawsuit regarding the sanitary sewer project.

### CONCLUSIONS OF LAW

1. Indiana Code Section 34–6–2–124 defines a public lawsuit. It provides that

". . . any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a

municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin the construction, financing, or leasing ..." is a public lawsuit

2. The allegations set forth in Counts I, II, III, and V of [the Property Owners'] complaint directly or indirectly question the validity, locations, wisdom, feasibility, extent and character of construction or financing of public improvements planned by [the Sewer District].

3. These Counts of [the Property Owners'] action are thus a "public lawsuit" within the meaning of I.C. 34–6–2–124.

\* \* \*

IT IS THEREFORE ORDERED that for [the Property Owners] to proceed with regard to Counts I, II, III, and V of the ... Complaint they shall post a bond with a surety acceptable to the court in the amount of [$9,000,000] within ten days from the date of this Order. If the Plaintiffs fail to post said bond in the time frame stated Counts I, II, III and V shall be dismissed.

*Id.* at 8–10. The Property Owners moved and the trial court certified its order for interlocutory appeal, and we accepted jurisdiction.

### DISCUSSION AND DECISION

■ The Property Owners appeal the trial court's conclusion that their complaint against the Sewer District is a public lawsuit. The trial court issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. When the trial court enters special findings, our standard of review is well settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*McCauley v. Harris*, 928 N.E.2d 309, 313 (Ind.Ct.App.2010) (citation and quotation omitted), *trans. denied*. In other words, "[a] decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court" or if the court misinterprets the law. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind.2008).

■ Here, the central question on appeal is the proper application of the public lawsuit statute. As the trial court noted, Indiana Code Section 34–6–2–124 defines the term "public lawsuit" as follows:

(a) "Public lawsuit," for purposes of IC 34–13–5, means:

(1) any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin the construction, financing, or leasing....

However, Indiana Code Section 34–13–5–2 qualifies the applicability of that definition as follows:

(a) Plaintiffs in a public lawsuit may sue in their capacity either as citizens or taxpayers of the municipal corporation. (b) A public lawsuit described in subsection (a) is a class suit (whether captioned as such or not), subject to the rights of intervention, the addition of parties, and the addition of other representatives of the same class, as is provided by law in other civil actions. Special appearances may be made in situations permitted by applicable law.

In *Dible v. City of Lafayette*, 713 N.E.2d 269 (Ind.1999), the Indiana Supreme Court clarified the scope of the statutory definition of "public lawsuit." There, the plaintiffs-landowners sought declaratory and injunctive relief to stop the construction of sewer improvements on a utility easement located on the plaintiffs' property. The trial court granted summary judgment to the City, and this court reversed and remanded with instructions that the landowners' claims be allowed to proceed as a public lawsuit.

Our supreme court disagreed that the landowners' claims qualified as a public lawsuit. To properly bring a public lawsuit, the court stated, "[a] plaintiff ... must have (1) proper legal status; (2) the proper type of lawsuit; (3) exhausted his or her administrative remedies; and (4) raised a proper objection at a public hearing." *Id.* at 274 n. 11. The court further clarified:

The public lawsuit statute "was designed to protect municipalities from 'a flood of harassing litigation which obstructs and delays public improvement.'" The ability to bring a public lawsuit as a class action [which is required under Indiana Code Section 34–13–5–2(b) ] neither confers new rights on the litigants nor affords them new remedies. The goal of the public lawsuit statute is to end costly serial litigation.

The Court of Appeals, *sua sponte*, declared the [landowners'] lawsuit a public lawsuit. We find the court's determination improper under these circumstances for two reasons. First, *the [landowners] have not brought suit in their capacity as taxpayers. Rather, they seek a mandatory injunction to protect their private property rights* as created by a restrictive covenant. And as we have held previously, *an action by an individual landowner seeking to protect his or her private interest in property does not constitute the basis for a public lawsuit. See Pepinsky v. Monroe County Council*, 461 N.E.2d 128, 132–33 (Ind. 1984) (stating that *the controlling factor is whether plaintiff seeks to protect public or private interest* ); *see also City of Elkhart v. Curtis Realty Co.*, 253 Ind. 619, 627, 256 N.E.2d 384, 388 (1970) ("Public Lawsuit Statute does not apply to appellee's suit wherein it challenges, as a landowner, the legality of the board proceedings which are part of and so closely related to the exercise by the appellant of its power of eminent domain to take appellee's land."). Second, we believe it unfair to impose the requirements of the public lawsuit statute upon the [landowners] where an adequate and less onerous remedy at law is available. We hold the Court of Appeals's directive to the trial court that the [landowners'] action proceed as a public lawsuit erroneous.

*Id.* at 274–75 (emphases added; some citations omitted).

We begin our review by noting that, although the Sewer District expressly questioned the status under which the Property Owners had filed their complaint as well as the type of lawsuit the Property

Owners had filed, the trial court's rationale in its order is based entirely on a comparison of the complaint with the statutory language of Indiana Code Section 34–6–2–124. After quoting that statute, the trial court determined the Property Owners' complaint to be a public lawsuit. In other words, the trial court concluded that the type of lawsuit filed by the Property Owners is the type of lawsuit contemplated by the public lawsuit statute. But the trial court did not find or conclude that the Property Owners had filed their complaint under the proper legal status, namely, in their capacities as citizens or taxpayers. *See* I.C. § 34–13–5–2(a); *Dible*, 713 N.E.2d at 274 n. 11. And the plain language of the complaint demonstrates that the Property Owners "have not brought suit in their capacity as taxpayers."[2] *See Dible*, 713 N.E.2d at 275. Accordingly, the trial court's findings do not support its conclusion that the Property Owners' complaint is a public lawsuit and, as such, the court's order is clearly erroneous. *See McCauley*, 928 N.E.2d at 313.

■ We also hold that the trial court's order that the Property Owners' claims are within the ambit of the public lawsuit statute misapplies the statute. As stated above, the trial court focused only on the language of the statute. But, as summarized in *Dible*, the controlling factor is whether the Property Owners seek to protect public or private interests. 713 N.E.2d at 275 (citing *Pepinsky*, 461 N.E.2d at 132–33). And "an action by an individual landowner seeking to protect his or her private interest in property does not constitute the basis for a public lawsuit." *Id.*

In Count I of their complaint, the Property Owners seek to invalidate the Sewer District's requirement, as applied to them, that they "tie into said sewer system and be responsible for paying all connection fees and monthly charges thereafter." Appellants' App. at 23. In Counts II and III, the Property Owners seek to invalidate additional fees the Sewer District intends to impose upon them based on their refusal to grant easements to the Sewer District. The Property Owners further demand in those two counts that they not be treated differently from landowners who do grant easements to the Sewer District. And in Count V, the Property Owners seek to invalidate the Sewer District's plan[3] to levy an assessment against them for having property located adjacent to a "T" connection on the sewer line even though their property is not to be connected to the sewer line.

In light of those claims, the trial court concluded that "[t]he allegations set forth in Counts I, II, III, and V of [the Property Owners'] complaint directly or indirectly question the validity, locations, wisdom, feasibility, extent and character of construction or financing of public improvements planned by [the Sewer District]." Appellants' App. at 9. But we must agree with the Property Owners' assessment that "[t]here are no claims in Counts I, II,

---

**2.** The Sewer District argues that the Property Owners' fleeting references to other landowners in the complaint evinces the Property Owners' intent to bring a class action. We cannot agree. While we are not bound by the manner in which the Property Owners chose to caption their complaint, *see* I.C. § 34–13–5–2(b), we note that the complaint is captioned in the Property Owners' individual capacities. More relevantly, and as discussed below, the relief requested is directed to them individually, and any references to other landowners is merely contextual, factual background.

**3.** Neither party suggests in this appeal, and we do not consider, whether any of the Property Owners' claims are unripe for adjudication.

III or V" that fall within the purview of the public lawsuit statute. Appellants' Br. at 8. To be sure, these allegations have implications of public importance, but that is not enough.

■ The critical factor is not whether the claims have some public importance but what the interests are that the plaintiffs seek to protect. *See Dible*, 713 N.E.2d at 275 (citing *Pepinsky*, 461 N.E.2d at 132–33). Although the complaint is perhaps more broadly written than it needs be, it is nonetheless clear from each of the allegations as well as the totality of the complaint that the Property Owners are seeking to protect only their individual interests in their own real property. According to the complaint, each Property Owner will individually be affected by the Sewer District's anticipated behavior, either because the Sewer District will impose additional costs and assessments directly against each of the Property Owners (as alleged in Counts I and V) or. because the Sewer District will penalize the Property Owners for exercising their rights to exclude others from their real property (as alleged in Counts II and III). In other words, the Property Owners' action against the Sewer District is "an action by individual landowner[s] seeking to protect [their] private interest[s] in property" and, therefore, "does not constitute the basis for a public lawsuit." *Id.*

The Sewer District characterizes the Property Owners' claims as "a global attack" on "policies that are not unique to their property, but are applied uniformly to all property owners in the District who will be served by this public improvement." Appellee's Br. at 8–9. Thus, the Sewer District contends that, by bringing their declaratory judgment action, the Property Owners present claims that exceed their private property interests and that a judgment will have ramifications for

other, similarly situated property owners. *Id.* at 9. The Sewer District further contends that the private interests of the Property Owners are so commingled with public interests that "the Public Lawsuit aspect of the counts should supersede the private interests." *Id.* We cannot agree because the convergence of private interests with public interests is not enough in itself to convert an action that does not otherwise qualify into a public lawsuit. While a judgment between the Sewer District and the Property Owners may constitute precedent, such a judgment will be binding only on the parties and not on a class of citizens or municipal taxpayers. *See* I.C. § 34–13–5–2(b). And while the public lawsuit statute "was designed to protect municipalities from a flood of harassing litigation which obstructs and delays public improvement," *Dible*, 713 N.E.2d at 274, the suit must first meet the legal standards for a public lawsuit. This one does not.

Thus, we reject the Sewer District's assertion that the Property Owners' individualized claims are so commingled with public claims that the whole of the complaint must be considered a public lawsuit. As discussed above, each of the Property Owners' allegations is based only on their individual interests in real property, and the Sewer District has failed to demonstrate the requirements to convert any of those claims into a public lawsuit.

In sum, the trial court's order that the Property Owners' complaint constitutes a public lawsuit is contrary to law and, therefore, clearly erroneous. We reverse the trial court's judgment and remand for further proceedings on the Property Owners' claims. Nothing in this opinion shall be taken as a comment on the merit of those claims.

Reversed and remanded for further proceedings.

ROBB, C.J., and CRONE, J., concur.