**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 15 2014, 10:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL A. BEASON**
Christopher & Taylor
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS M. CONNOR**
Dinsmore & Shore, LLP
Cincinnati, Ohio

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALAN R. KOHLHAAS, on behalf of himself and all others similarly situated, <br><br>     Appellant-Petitioner, <br><br> vs. <br><br> HIDDEN VALLEY LAKE PROPERTY OWNERS ASSOCIATION, INC., and ROBERT A. WILL, WILLIAM ACRA, CARL ADKINS, MARK HEMMERLE, and JOHN FRUIN, individually and as Owners Association, Inc., <br><br>     Appellee-Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    No.  15A01-1308-PL-357 |

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable Ted R. Todd, Special Judge
Cause No. 15C01-0502-PL-009

**July 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Dr. Alan Kohlhaas appeals the trial court's grant of summary judgment to Hidden Valley Lake Property Owners Association, Inc. (the "POA"), and its members of the Board of Directors including Robert Will, William Acra, Carl Adkins, Mark Hemmerle, and John Fruin (collectively with the POA, the "Defendants"). Dr. Kohlhaas raises three issues which we revise and restate as:

I.      Whether the trial court erred in granting summary judgment in favor of the Defendants;

II.      Whether the trial court erred when it denied Dr. Kohlhaas's motion for class certification; and

III.      Whether Dr. Kohlhaas's complaint states sufficient damages.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The POA is a non-profit property owners association for a private residential lake community in Dearborn County, Indiana. Robert Will, William Acra, Carl Adkins, Mark Hemmerle, and John Fruin are or were property owners and residents in the Hidden Valley community and volunteer members of the Board of the POA. Dr. Kohlhaas is a property owner and resident of the Hidden Valley community. The POA owns a swimming pool, seventy-seven acres of play fields, a restaurant, a community center, a maintenance area, several small fishing lakes, parks, roads, and many acres of green space. The operations of Hidden Valley and the conduct of its residents are governed by the Articles of Incorporation, the Bylaws, the Restrictions, Conditions, Covenants and Agreements, and the Rules and Regulations.

The POA Handbook contains a section titled "HIDDEN VALLEY LAKE PROPERTY OWNERS ASSOCIATION BUILDING CODE AND RESTRICTIONS For Dwelling Houses-Single Family Residences." Appellant's Appendix at 131. This section states that "[d]ocks may not extend into the lake more than eight (8) feet" and "[r]etaining/sea walls should be built of natural materials or concrete." Id. at 133.

On June 19, 2003, Eric Rabenold, a Hidden Valley resident and long-time member of the Lakes committee at Hidden Valley, wrote to the POA Board of Directors noting that the existing docks at the POA beach were rarely if ever used because the water in front of the docks was extremely shallow and had many large rocks. Rabenold recommended that a new dock extend out at least twenty feet in order to safely allow boats to pull up to them and load passengers safely. An attachment to the letter included some pros and cons and the potential cons included that the proposed dock would extend further into the lake than the eight feet that was permitted for private docks at Hidden Valley. The POA already owned several docks that extended beyond eight feet into the lake.

On August 28, 2003, the POA Board approved a request by the Wintz family for the construction of a seawall at the shoreline bordering lot #1626. The seawall was to be constructed out of a solid plastic material that attached to the ground with galvanized steel and was designed with a "dental" configuration to break up waves to stop shoreline erosion and prevent splashing and waves from being driven back into the lake from the lot which was near a high speed boating area. Id. at 59. The new type of seawall was viewed by the Board as a test case for a promising new material and design. The Board determined that the

3

proposed seawall would be much better looking and more appealing than the array of various seawalls then in existence. The Board approved the motion conditioned on the POA having the authority to remove the wall at any time so that the Board could assess whether the new type of seawall actually performed better than natural materials, and that the seawall would in no way set precedent for other such projects on the lake. On September 23, 2003, a letter was sent to the Wintz family advising them of the approval and of the conditions the Board had placed on the approval. At some point, the seawall was constructed.

On January 22, 2004, the Board voted to authorize the expenditure for the project to install a dock at the POA beach in roughly the manner proposed in Rabenold's letter. The Board decided to authorize the construction of the beach dock for a variety of reasons including improving access for handicapped persons, allowing multiple boats to use the dock at once, and improving access for ski boats that were impeded by rocks in the water.

On November 23, 2004, Dr. Kohlhaas asked the Board to reconsider its approval of the dock. Will explained that "based on the Lakes Committee recommendation of the layout of the dock, the majority agreed that the perpendicular dock, while it extended out more than eight feet, [] allowed more residents to utilize the dock facilities" and asked that Dr. Kohlhaas "keep in mind that rules are for members, and this is a POA dock and the POA has leeway because all individuals use these docks." Id. That same day, Dr. Kohlhaas asked the Board to reconsider its approval of the seawall. Adkins noted that the seawall was a replacement of an existing seawall. It was also noted that the Board was "looking at it as an

4

experimental product and was specific on reviewing its durability." Id. at 61. Will also noted that the seawall manufacturer provided a fifty-year guarantee.

On January 27, 2005, Dr. Kohlhaas filed a "Complaint for Injunctive Relief or in the Alternative, Damages." Id. at 285. The Complaint alleged that the Defendants allowed and permitted violations of the Handbook in three particular ways: (1) the dock at the beach extends more than eight feet from the shoreline out into the lake; (2) the seawall was constructed in front of Lot 1626 Knollwood and extended beyond the lot owner's property; and (3) the seawall is constructed of non-approved materials. Dr. Kohlhaas alleged that none of these additions were approved by the Architecture Committee and that the continued existence of these violations impairs the value of his and other owners' property and potential resale value. Dr. Kohlhaas alleged that the actions of the Board constituted gross negligence and willful and wanton abrogations of the duties of the Board members and/or directors of the POA. Dr. Kohlhaas alleged that he brought the action on behalf of himself and all others similarly situated, and requested: (1) certification of the action as a class action; (2) injunctive relief against Defendants and an order for removal of the non-conforming structures, or in the alternative; (3) damages in an amount that would compensate the members of the class for the loss in value of their property; and (4) all other just and proper relief in the premises.

On March 5, 2007, the Defendants filed a memorandum in opposition to Dr. Kohlhaas's motion for certification of class. On October 2, 2009, the court held a hearing on the issue of class certification. On October 27, 2010, the court denied Dr. Kohlhaas's motion

5

for class certification. Specifically, the court found Dr. Kohlhaas failed to demonstrate that any other property owner had claimed an injury as a result of the alleged actions. The court stated:

> For many in the proposed class it would seem their damages would be trivial. The legal maxim *de minimus non curat lex* comes to mind. In this case it is hard to imagine damages accruing to the vast majority of the proposed class that would be worth pursuing individually for either economic or sociological reasons.

Id. at 11. The court concluded that "the predominance and superiority elements that are prerequisites to a class action have not been met." Id. at 11-12. On November 19, 2010, Dr. Kohlhaas filed a motion requesting that this Court accept jurisdiction of the interlocutory order denying class certification, which this Court denied on January 7, 2011.

On June 10, 2013, the Defendants filed a joint motion for summary judgment. The Defendants asserted that summary judgment was appropriate on Dr. Kohlhaas's claim for breach of restrictive covenants because Hidden Valley and its volunteer Board members were authorized to take the actions they took and because Dr. Kohlhaas suffered no legally cognizable damages. The Defendants also asserted that the Board's actions were immunized by the Nonprofit Corporations Act, and summary judgment was warranted on Dr. Kohlhaas's claims against those serving on the Board. On June 28, 2013, Dr. Kohlhaas filed a response to the Defendants' motion for summary judgment.

On July 25, 2013, the court held a hearing. On July 31, 2013, the court entered an order granting the Defendants' motion for summary judgment. The court's order states:

> The first question for the Court to answer is whether the Defendants had the authority to approve construction of (1) the dock or (2) the seawall that are

6

the subject matters of this litigation. By the terms of the applicable Articles of Incorporation, the By-Laws, the Restrictions, Conditions, Covenants and Agreements, and Rules and Regulations of the Hidden Valley Lake Property Owners Association ("POA") the board of directors is given broad authority to act on behalf of the Corporation.

As to the dock, it is first noted that this is a dock extending from POA-owned real estate, not property of an individual landowner. It is available for use by all landowners and their guests. The only place in the controlling documents where a restriction of eight feet for the length of docks is mentioned is under the section referral [sic] to "Dwelling Houses – Single Family Residences". That being so, the Court finds that objection not to apply to docks extending from common grounds in the Hidden Valley community.

As to the seawall, the objection is that the seawall as approved was made of "a solid plastic material that attached to the ground with galvanized steel and was designed with a 'dental' configuration to break up waves to stop shoreline erosion, prevent splashing and prevent waves from being driven back into the lake from a lot that was near a high speed boating area". The regulations provide that seawalls, "should be built of natural materials or concrete".

The POA board approved this construction knowing it was not to "be build [sic] of natural materials or concrete". Their stated reasons included it would "be much better looking" and more "appealing than many of the seawalls". The board assessed samples of the materials and analyzed the guarantees the produce [sic] carried. The minutes reflect that the construction was conditioned on, "the POA having the authority to remove the wall at any time" to assess whether the new type of seawall performed better than natural materials. It was further stated that this seawall, "would in no way set precedence [sic] for other such projects on the lake".

At a subsequent meeting of the directors [Dr. Kohlhaas] asked the Board to reconsider its approval of the seawall. At that meeting it was noted that, as to location, the seawall was a replacement of an existing seawall. It was also noted that, "The board was looking at it as an experimental product and was specific on its renewing its durability". It was further noted that the seawall manufacturer provided a fifth [sic] year guarantee. The board did not change its vote.

Because the restriction uses the word "should" rather than "shall" in setting for [sic] the condition, because the board exercised its discretion fully

7

aware of the situation, stated good reasons for its decision, and because the board retained the authority to remove the wall at any time, it had the authority to authorize the wall's construction.

The Court also notes that [Dr. Kohlhaas's] arguments are based upon restrictive covenants. Restrictive covenants are not a favorite of the law and are to be strictly construed in favor of the rights of the fee simple owner of the land. This, coupled with power of the board to act in the best interests of its shareholders, makes the actions taken here as to both the dock and seawall to be legally appropriate. The law is with the Defendants on both issues.

The Court, having resolved the issues in favor of the Defendants, the issue of damages is moot. A Summary Judgment should be entered in favor of the Defendants.

Id. at 14-15.

## DISCUSSION

The first issue is whether the trial court erred in granting summary judgment in favor of the Defendants. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment

8

context, we are not bound by the trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

To prevail on its motion for summary judgment, the Defendants need only have negated one element of Dr. Kohlhaas's claims for injunctive relief. Dible v. City of Lafayette, 713 N.E.2d 269, 272 (Ind. 1999). A mandatory injunction is an extraordinary equitable remedy which should be granted with caution. Id. The plaintiff carries the burden of demonstrating injury which is certain and irreparable if the injunction is denied. Id. In making its decision the trial court must weigh whether the plaintiff has an adequate remedy at law and the court must consider whether an injunction is in the public interest. Id.

The grant or denial of an injunction lies within the sound discretion of the trial court and will not be overturned unless it was arbitrary or amounted to an abuse of discretion. Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc., 751 N.E.2d 702, 712 (Ind. Ct. App. 2001). Generally, the trial court considers four factors in determining the propriety of injunctive relief: (1) whether plaintiff's remedies at law are inadequate; (2) whether the plaintiff can demonstrate a reasonable likelihood of success on the merits; (3) whether the threatened injury to the plaintiff outweighs the threatened harm a grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief. Id. The difference between a preliminary and a permanent injunction is procedural. Id. at 712-713. A preliminary injunction is issued while an action is pending, while a permanent injunction is issued upon a final determination. Id. at 713. Thus, when

9

the plaintiff is seeking a permanent injunction, the second of the four traditional factors is slightly modified, for the issue is not whether the plaintiff has demonstrated a reasonable likelihood of success on the merits, but whether he has in fact succeeded on the merits. Id. Finally, permanent injunctions are limited to prohibiting injurious interference with rights. Id.

Dr. Kohlhaas argues that "[n]one of the actions of the Board included a resolution and affirmative vote of a majority of all the members of the Board to specifically alter or amend the relevant rules" and "[n]one of the Board minutes detailing the actions of the Board show any motions to amend or alter the rules, or any other positive actions undertaken by the Board to address the violations of the Rules." Appellant's Brief at 14-15. Dr. Kohlhaas asserts that "[w]hile the Articles clearly provide that the Board has the authority to alter or amend the Rules, those Articles also require that they must take official action to do so" and that "[s]imply agreeing to ignore the duly-enacted Rules is not contemplated by the Articles and is not supported by them." Id. at 15. He contends that "asserting that the Board is not bound by the By-Laws, or the Rules as Mr. Fruin did in his deposition, demonstrates that the Board knowingly acted in a manner contrary to the Articles." Id. (citations omitted). Dr. Kohlhaas states that the Board's "arrogation of powers contrary to the Articles and the actions of Board as alleged by Dr. Kohlhaas are in violation of the Articles and are, at a minimum, demonstrative of a question of fact mandating reversal of the court's Order of July 31." Id.

The Defendants argue that the residential dock length rule does not apply to the public POA beach dock, that if the dock length rule does not even apply, then it could not have been

10

breached, and with no breach, the residential dock length rule cannot form the foundation for a breach of contract claim. The Defendants claim that the conclusion is the same with respect to the seawall.

We note that the articles of incorporation and bylaws of a non-profit corporation constitute a contract between the corporation and its members and among the members themselves. Lynn v. Windridge Co-Owners Ass'n, Inc., 743 N.E.2d 305, 313 (Ind. Ct. App. 2001) (citing Ind. High Sch. Athletic Ass'n. v. Carlberg, 694 N.E.2d 222, 230 (Ind. 1997), reh'g denied), reh'g denied, trans. denied. Initially, we note that we agree with the trial court's statement that the Articles of Incorporation, the Bylaws, the Restrictions, Conditions, Covenants and Agreements, and Rules and Regulations of the POA give broad authority to the POA.

The Articles of Incorporation for the POA state:

ARTICLE II

The purposes for which the Corporation is formed are:

\* \* \* \* \*

B.     In accordance with the restrictions as set forth in the aforesaid contracts and/or deeds, to promulgate rules and regulations for the use of all streets, rights-of-way, common lands, parks, recreational facilities, swimming pools, etc., which said rules and regulations shall be binding upon all shareholders of this Corporation, their families, guests and invitees.

\* \* \* \* \*

H.     To promulgate rules and regulations controlling the construction of improvements on lots within Hidden Valley Lake Subdivision, as the same now, or hereafter exists.

11

* * * * *

ARTICLE IX
PROVISIONS FOR REGULATION AND CONDUCT OF THE AFFAIRS
OF CORPORATION

Section 1.  Other provisions, consistent with the laws of this State, for the regulation and conduct of the affairs of this Corporation, and creating, defining, limiting or regulating the powers of this corporation or the members shall be as from time to time set forth in the By-Laws of this Corporation, SUBJECT HOWEVER:

A. To any limitations or restrictions imposed by law or by these Articles of Incorporation or by the by-laws of this Corporation, the Board of Directors of the Corporation is hereby authorized to exercise, in furtherance of the purposes of the Corporation, all the powers of the Corporation without prior authorization or subsequent approval by the members of the Corporation[;]

B. To the power to make, alter, amend or repeal the By-Laws and rules and regulations for the conduct of the affairs of the Corporation, including the power to establish officers of the Corporation and to elect such officers for such terms, in such manner and to perform such duties as it may determine in its sole discretion, shall be vested in the Board of Directors of the Corporation; Provided However that no act of the Board of Directors shall be inconsistent with or contradictory to these Articles of Incorporation or any provision of law . . . .

Appellant's Appendix at 97-100.

The Bylaws contain the following:

The Board of Directors shall promulgate such rules and regulations as it deems desirable for governing the use of the facilities of said Subdivision and the conduct of the members of this Association, their families, guests and visitors, giving due regard to the recommendations of the appropriate committees. *Such rules and regulations may be altered, amended, changed, rescinded, revoked or enlarged upon in whole or in part, at any time by action of the Board of Directors.*  The copy of the current rules and regulations shall at all times be maintained by the Secretary.

12

*Subject to law and the Articles of Incorporation, the power to make, alter, amend, or repeal all or any part of this code of by-laws is vested in the board of directors.* The affirmative vote of a majority of all the members of the board shall be necessary to effect any such changes in this code of by-laws.

Id. at 109 (emphases added).

The "Restrictions, Conditions, Covenants, and Agreements" state:

3.	No residence shall have less than the number of square feet of living space as the same is designated on the recorded Plat restrictions for the particular lot, and in no event shall any residence have less than nine hundred [900] square feet of living space on the ground floor, or first floor, exclusive of porch area. No porch or projection of any building shall extend nearer than forty [40] feet to any road right-of-ways, nor nearer than ten [10] feet to the property line of any abutting property owner, nor nearer than fifty [50] feet from the normal water line of any lake located on Hidden Valley Lake Subdivision as the same is shown on the recorded Plats and no portion of any building shall be constructed at a point below the six forty-five [645] elevation. No visual obstructions shall be closer than fifteen [15] feet to the pavement at any intersection. *Upon appeal in specific cases the Board of Directors of Hidden Valley Lake Property Owners Association, Inc., may grant variance from the terms of this restriction which will not be contrary to law and the Interest of other lot owners in Hidden Valley Lake Subdivision, where owing to special conditions, a literal enforcement will result in unnecessary hardships, to the end that the spirit of this Restriction shall be observed and substantial justice done.*

*All plans and specifications for any structure or improvement to be erected on or moved upon or to any lot, and the proposed location thereof on any lot or lots, the construction material, the roofs and exterior color schemes, as well as all remodeling, reconstruction, alterations, or additions thereto on any lot shall be subject to and shall require the approval in writing of Hidden Valley Lake Property Owners Association, Inc., or its duly authorized agent before any such work is commenced. Said Association shall have the right to disapprove any plans*, specifications or details submitted to it in the event the same are not in accordance with all of the provisions of these restrictions or the rules and regulations promulgated by said Association or when [1] the design or color scheme of the proposed building or other structure is not in harmony with the general surroundings of such lots or with the adjacent buildings or

structures, [2] the plans and specifications submitted are incomplete, or [3] the Association deems the plans, specifications or details or any part thereof, to be contrary to the interest, welfare or rights of all or any of the real property subject hereto, or the owners thereof. The decision of the Association shall be final. Neither the Association, its agents nor Hidden Valley Lake, Inc., or its agents shall be responsible for structural deficiencies, or any other defects in plans or specifications submitted, revised or approved in accordance with the foregoing provisions.

Id. at 110 (emphasis added).

The portion of the POA Handbook in which the requirements relating to the docks and seawalls cited by Dr. Kohlhaas appear is titled "HIDDEN VALLEY LAKE PROPERTY OWNERS ASSOCIATION BUILDING CODE AND RESTRICTIONS For Dwelling Houses-Single Family Residences." Id. at 131. This portion of the Handbook states:

The purpose of this code is to carry into effect the conditions, restrictions, covenants and agreements contained in the Contracts of Purchase and Deeds of Conveyances of lots in Hidden Valley Lake Subdivision, and to provide specific minimum standards for preserving the original nature and intent of Hidden Valley Lake *by regulating the type and location of residential construction* to be consistent with a residential community containing recreational facilities in a private, owner regulated development, and in conjunction with the above to include by reference the Single Family Dwelling Code of the Indiana Department of Fire and Building Services as the basic written body of construction regulations and the Dearborn County Zoning Ordinance #12-1980.

Id. at 26 (emphasis added). We cannot say that the POA violated any rule related to the dock given that such a rule applied to the individual lots and the dock in question was built on the POA beach.

With respect to the seawall, we observe that other provisions related to seawalls use mandatory language. For example, under the heading "Seawall/Shoreline Reclamation," the Handbook states: "*Must be* approved by the Architectural Committee," and "[t]he property

14

line at the lakeside *shall be* surveyed and staked." Id. at 133 (emphases added). The relevant portion of the Handbook addressing what material can be used to build seawalls states that "[r]etaining/sea walls *should* be built of natural materials or concrete." Id. (emphasis added). This court has previously held that although the word "should" is more persuasive than "may," it is not a mandatory word. See Turner v. Turner, 785 N.E.2d 259, 266 (Ind. Ct. App. 2003) (citing Terpstra v. Terpstra, 588 N.E.2d 592, 595 (Ind. Ct. App. 1992)). We also observe that the POA Handbook states: "RULES AND FINES ARE SUBJECT TO CHANGE WITH HVL POA BOARD OF DIRECTORS APPROVAL." Appellant's Appendix at 117. Further, we cannot say that the language in the Articles of Incorporation, Bylaws, and the Handbook prohibited the Board or its members from approving the seawall in question. Accordingly, we affirm the trial court's grant of the Defendants' motion for summary judgment.

Because we affirm the court's grant of summary judgment, we conclude that the issue regarding the petition for class certification is moot. See Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 97 (4th Cir. 2011) ("[A]s a result of our holding that the district court properly awarded summary judgment to DuPont on the above individual claims, we do not reach the separate issue of the timeliness of the plaintiffs' request for class certification of these claims as that issue is now moot."), cert. denied, 132 S. Ct. 499 (2011); Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1283 (8th Cir. 1996) ("Finally, the district court's denial of class certification is moot as appellant's claims fail on the merits. Accordingly, for the reasons discussed above, we affirm the District Court's order granting summary judgment

15

for McDonnell Douglas Corporation."); Chambers v. Am. Trans Air, Inc., 17 F.3d 998, 1006 (7th Cir. 1994) (holding that the class action certification issue was moot because the court affirmed the entry of summary judgment and the plaintiff could not represent a class given that he had no individual cause of action), reh'g and suggestion for reh'g en banc denied, cert. denied, 513 U.S. 1001, 115 S. Ct. 512 (1994); Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1420 (9th Cir. 1988) ("Because we affirm the summary judgment as to all Forsberg's claims, any issue relating to the certification of a class of similarly situated plaintiffs with identical claims is moot. Hence, we need not reach either of these issues."). With respect to the damages issue, we observe that Dr. Kohlhaas states that should this Court vacate the order granting summary judgment then the issues regarding damages become relevant. Because we affirm the trial court's grant of summary judgment, we need not address the issue of damages.

CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the Defendants.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.

16